Owen v. Tankersley.

## JAMES AND CATHERINE OWEN V. TANKERSLEY, ADM'R.

I shall consider this case, as if all the parol evidence rejected had been admitted, giving, however, only the legal weight to such evidence, and to conclusions of law, stated in the evidence, such force as they derive from the facts in proof.

It appears to be well established at Common Law, that where slaves or other chattles pass from the possession of a parent into the possession of a daughter, on or after marriage, a gift to the daughter is to be presumed, and it is presumed that the gift is absolute and unqualified, unless there be some express condition or stipulation to the contrary at the time of the gift. Although the parent may have intended only a loan or a conditional gift, yet if this be not expressed at the time, it will not affect the character of the transaction, as a gift.

The delivery (at Common Law, in Georgia,) of the property to the plaintiffs, (by a parent to his daughter and her husband,) presumes a gift to the wife. This, by operation of law, immediately vested in the husband; and as no conditions were attached at the time of the gift, he held in absolute right, which could not, at least without his consent, be modified by the subsequent acts and declarations of the donor, that the gift was for the sole and separate use of the wife. The treatment of the property as his own, by the husband, is incompatible with such consent.

Where it was proved that a parent delivered a slave to his daughter after marriage, (at Common Law,) and by his will several years afterwards, bequeathed the slave to his daughter for her sole and separate use, with a limitation over to a stranger in the event of her death leaving no child or children, it was held that the property vested in the husband on the delivery, and that the will was inoperative, in the absence of proof of the husband's consent thereto.

A bequest, at Common Law, of property to a legatee, a married woman, subject to her disposal and hers only, is equivalent to a limitation to the sole and separate use of the wife, not subject to the debts, disposition or control of the husband.

Where the husband joins the wife in a suit to recover property as the property of the wife, a recovery cannot be had unless the property be proved to belong to the wife, and although it be proved to be the property of the husband.

Where the husband joined the wife in a suit to recover certain slaves as the property of the wife, and it was proved that the property was delivered by the father of the wife to her after marriage, in a State where the Common Law prevailed as to marital rights; was treated by the husband as his own for several years, when the father died leaving a will in which he bequeathed the property to his daughter, with a limitation over to a stranger in the event of her death without a child or children, and the husband still continued to treat the property as his own, until the commencement of the suit, and the defendant claimed by a transfer under authority of the husband which was *prima facie* defective, it was held that the property was proved, at most, to be the property of the husband, and that there could be no recovery although the husband had joined in the prayer that the property be decreed to be the property of the wife.

*Quere*, as to the effect on the rights of the husband, of a joinder by him in a suit by the wife to recover certain property, which turns out to be the property of the husband, he failing to assert his own right to the property, in that suit ?

Appeal from Harrison.

*J. A. Jones*, for appellee.

HEMPHILL, CH. J. This is a suit by plaintiff and appellants to recover a negro woman and child alleged to be the property of the said Catherine, with a prayer that it be ordered and adjudged to be her property. Judgment was for defendant, and eighteen grounds have been assigned as reasons for its reversal. It would be a tedious task to recapitulate the facts of the case, or to discuss the numerous grounds on which the judgment has been assailed.

The controversy was finally reduced to the single point, whether the slaves were the property of the husband James H., or of Catherine his wife; or, in other words, whether the proof established the fact of property in Catherine, as had been alleged and claimed in the petition.

I shall consider this case as if all the parol evidence rejected had been admitted, giving however only the legal weight to such evidence, and to conclusions of law stated in the evidence such force as they derive from the facts in proof. It appears that the plaintiff Catherine is the daughter of one Hugh Rown; that she intermarried with the plaintiff James H., and they having lived together for some years in Georgia, about the year eighteen hundred and forty, as nearly as can be ascertained from the record, removed to the State of Alabama, where they have ever since resided, and that the negress in controversy was the property and remained in possession of Hugh Rown, the father of Catherine, until about the time of the removal of the plaintiffs to Alabama, when she went into their possession, and so remained for the next eight or nine years.

The question is, what was the effect, under the rules of the Common Law, of this transmission of the property to the possession of the plaintiffs?

Owen v. Tankersley.

And it appears to be well established upon authority, that when slaves or other chattles pass from a parent to a daughter on or after marriage, a gift to the daughter is to be presumed, and that this is absolute and unqualified, unless there be some express condition or stipulation at the time of the gift to the contrary. (4 McCord, 228 ; 1 Nott & McCord, 221–223 ; 1 Richardson, Eq. Rep. 301.) Although the parent may have intended only a loan or a conditional gift, yet if this be not expressed at the time, it will not affect the character of the transaction as a gift. For it makes no difference what the parent intended, the only question is what he did. His acts are the best, as they are the only conclusive evidence of his intentions. There is not a *scintilla* of evidence of facts or declarations cotemporaneous with the act, to show what the parent intended at the time of the gift, or in other words, at the commencement of possession in the plaintiffs, or to prove any stipulations on his part, that the property was for the sole and separate use of the plaintiff Catherine. The only evidence that the gift was conditional is the declaration of the donor in Georgia, made subsequent to the gift, that the property was for the separate use of his daughter; but the only effect of these subsequent declarations would be on the donor himself. They would stop him from reclaiming the property, but they could not change or modify the rights of the husband, vested under the gift. Those were modifications to which the husband did not assent. They were made in his absence, and in all probability when he was at his home in Alabama. The case then stands thus.

The delivery of the property to the plaintiffs presumes a gift to the wife. This, by operation of law, immediately vested in the husband, and as no conditions were attached at the time of the gift, he held in absolute right, which could not, at least without his consent, be modified by the subsequent declarations or acts of the donor.

The next question is, has the husband assented to this modification of his rights, and this diversion of his property to

the exclusive use and control of his wife.  There is no evidence of any positive act by which such assent was expressed. The proof as to his *quasi* assent, or as to the right in which he claimed the property, is conflicting.  The first witness testified that he never heard the husband claim the negroes as. his own, but frequently heard him say that they were his. wife's.  The testimony of other witnesses, however, is to the effect that he .always, during the eight years the slaves remained in Alabama, claimed them as his own ; that they were levied on to satisfy his debts and were surrendered again to. him, not on the ground that they were his wife's property, (as we may infer from the evidence,) but from a claim set up by a stranger, under a bill of sale, which the Sheriff was not willing to risk, without a bond of indemnity, which being refused, he returned the property to the husband in whose possession he had found it.  The proof is also, that the husband being embarrassed with debts, run this property to Shreveport in '48 or '49, to shield it from sacrifice, and he there declared it to be for sale, thus evincing that he was not claiming it in right of his wife, for her right could not be effected by his debts, but that he was claiming it in his own right, which he might lawfully do, the gift originally being without conditions or restrictions, and no subsequent modification having been made in it with his assent or approbation ; and if there be a conflict as to his words giving such assent, there is none as to his acts, for these are uniformly to the contrary.

But the plaintiff Catherine also claims under the will of her father, executed in 1845 and proved in 1848, by which the negress Mary was bequeathed to her, subject to her disposal and her's only, with a *limitation over to John Rown and his heirs,* in the event of her death leaving no child or children. This claim rests on no foundation.  The bequest had no effect on the previously vested right of the husband.  The will was not made until five, nor proven until eight years after the gift or the accrual of the right to the husband.  The rational inference is, that the probate followed shortly after the death of

the testator, consequently the bequest is an attempt to change the disposition of property, which eight years before had been fixed irrevocably in the husband, by the act of the testator himself. The absurdity of such an attempt is too palpable to require illustration. The rights of the husband, through the gift to his wife, were beyond the control of the testator. His possession and right under it were adverse to all the world, to the donor as well as others. (1 Rich. Eq. Rep. 301.)

As before stated, the husband might have assented to such a disposition of his property for the benefit of his wife. But did he give such assent? Clearly not. His acts manifest a very different purpose. The will was proven in the year 1848, and in that year the husband was shifting from post to pillar, and seizing upon one device after another to save this property from sale for his debts, under the belief of course that it was subject to his debts, that it was his own property, and his acts show that he intended to claim it as such to save it for his own benefit, and secure by sale the proceeds to himself.

Consequently the wife can set up no claim under the will, nor under the subsequent acts of her husband, for they are not such as to show assent to the bequest, or a surrender of his own rights. Such an assent cannot be presumed, and especially where, as in this case, the design of the testator was in the event that the wife died childless, to exclude the husband from all share or right in the property.

Had the bequest been valid, or in other words, had the negress been the property of the testator at the time of his death, there is no doubt that the title set up by Catherine should have been sustained. The Court was mistaken in supposing that a bequest of property to a legatee, subject to her disposal and her's only, would not vest in her a separate right. If property is subject to disposal by the wife only, of course it cannot be disposed of by the husband. The words are as exclusive in effect as any which could be used in the language, and are equivalent in import to a limitation to the sole and separate use of the wife, not subject to the debts, disposition

or control of the husband. But the rulings of the Court, whether right or wrong, in relation to the will, its construction or effect, can have no influence in the cause. The plaintiff Catherine can claim no right under the will. The property bequeathed did not belong to the testator, and of course the whole of the proceedings in relation to the will are extraneous to the merits of the cause, and must be discarded from consideration.

The evidence, as a whole, shows that the husband, by his acts, claimed this property as his own, abducted it as his own from the reach of his creditors, held it out as such in the place of refuge to which he had fled, that he there placed it in the possession of his partner, that it was there seized for a partnership debt, and to prevent its sacrifice, (as may be presumed,) was sold at private sale, the debt discharged, and finally for a valuable consideration passed into the hands of defendant, and all this was done in relation to property, the right to which, was by law vested in the husband under valid title. Certainly there is nothing in this state of facts which can benefit the plaintiff Catherine or authorize her recovery. But as a dernier resort, it is contended that the husband having joined in the suit, and in the averment that the slaves are the property of his wife, his right to such property is concluded by such averments, and is passed, by way of admission or estoppel, to his wife, and consequently, on proof of title in the husband, the wife must recover. No authorities are cited for this position, and the point not being fully argued, I shall not devote much time or space to its investigation. One thing strikes the mind, and that is, its admirable adaptation to the designs of defaulting debtors, against the claims of their creditors. A fugitive debtor, having exhausted all other schemes of evasion, and having treated his property at the spot in which, after flight, it had found a resting place, in such a mode as to induce a belief that it might be lawfully sold, has only to join his wife with him in a suit for its recovery, insisting on some ancient rights in her from gifts and bequests;

but finally relying on title in himself, incorporated by a spe-
cies of fiction with the rights of his wife, and if under such
confusion of rights the wife should recover judgment, the hus-
band's creditors would be in effect defeated, as it might be
impossible for them to prove (if such proof were admissible)
under what right the wife recovered, and consequently to de-
termine with any kind of certainty, whether the property was
liable to their demands or not, as this would depend altogether
on the character of the wife's claim and the grounds on which
she recovered, whether it was under or independent of the
rights of the husband. Such a device would indeed be one
among, and not the least remarkable of, the novelties of the
day.

But in relation to the merits of this pretension, one thing is
certain, that whatever may be the effect on his own rights,
of joinder by the husband with his wife in a suit for the re-
covery of property claimed by her, such joinder ought not, to
operate to the injury of his creditors or of purchasers claiming
from or through him, and although the defendant here is not
a creditor of the husband, and does not claim from him as a
purchaser, there being no proof of authority in the partner who
made the sale, yet the defendant cannot be regarded as a mere
wrongdoer. The property was sold, at least partly, for the
benefit of the husband, and by his agent and partners to whom
it had been entrusted; the property had previously been held
out by the husband himself as subject to sale, and it came into
the hands of the defendant for a valuable consideration, and
through a transaction which has the appearance of fairness.
The defendant has some, though perhaps not sufficient merits
to have contended successfully against the title of the plain-
tiff, if that had been set up for his defeat.

But another matter ought to be considered, and that is, the
defendant was wholly unapprised by the pleadings, that he
would have to meet and combat the title of the husband. The
plaintiffs by averment set up no such right, but a very differ-
ent one, viz: the right of the wife. And the defendant could

not have supposed that the mere joinder of the husband to assert that right, was to be the creation of the right itself, and consequently would not be prepared to meet such case; nor would he deem it incumbent on him to introduce full proof to show such acts of the husband and such merits in his own claim, as would render a subsequent transfer by the husband to the wife a fraud upon himself. He would not dream that the mere joinder of the husband in the suit was, by legal fiction, to operate a transfer in favor of the wife, by which not only the husband and himself, but strangers would be bound. Defendants would be surprised, if, when required to answer and defend against the claims of a wife, they would be forced not only to contest her rights but also those of the husband, who is joined with the wife, (it is true,) but not for the purpose of maintaining his own rights but of asserting rights of his wife, entirely distinct from independent of and adverse to those of the husband,—a joinder which has not hitherto been deemed to impart any right as against the defendants in the suit.

It might be questioned whether the joinder by the husband in the suit of the wife against third persons should conclude his own rights unless in cases of recovery in such suits, and where the subsequent assertion of his own rights might be deemed fraudulent against third persons who, in their dealings, have relied on the judgment in favor of the wife.

But, should the judgment negative the rights of the wife, ought the mere joinder of the husband to deprive him from subsequently asserting his own rights? His separate rights were not involved in the suit. The issue was made solely and exclusively upon the rights of the wife, and the judgment can operate on no other rights than those involved in the issue. The law authorizes him to sue either alone or jointly with the wife, to enforce her separate rights, and this he may do against purchasers from himself. His acts, in making such sales, do not preclude either his wife or himself, as her virtual agent and representative, from bringing suit to defeat such sales; and as his dealings with the property as his own do not

preclude him from subsequently asserting the adverse rights of his wife, so neither should his acts in the assertion of his wife's rights, debar him from maintaining his own, if this can be done without injury to or fraud upon others.

When suits are brought for the exclusive benefit of the wife, the issue is restricted to her rights alone. The husband, as a species of next friend, may come in, (and such is his duty by law,) to maintain these, and whether his averments conclude himself or not, they cannot put the defendant on any other issue than that of the distinct, separate rights of the wife antecedent to the commencement of the suit, or require him to defend against rights which were not the foundation of the suit, but which were quickened into life with the same breath that blew the suit into existence.

There is no error in the judgment and the same is affirmed.

Judgment affirmed.