Syllabus.

## SIMPSON HOLLOWAY V. DANIEL HOLLOWAY ET AL.

Suits cannot be instituted in the name of the agent of the plaintiff; they must be brought in the name of the principal in whom the right may be. The exceptions to this rule do not apply in a case where the suit was to recover land.

The 8th section of the act of 10th February, 1852, concerning the surveys of lands, reads as follows: "All lands heretofore located by virtue of any genuine claim to land shall be surveyed within twelve months from the passage of this act, and all lands which may be hereafter located shall be surveyed within twelve months from the date of location, or the said locations, in either case, shall be null and void, and the lands be subject to re-location and survey, as other vacant and unappropriated land." (Paschal's Dig., Art. 4568, Note 1009.) A location made in 1844, if not surveyed as directed in this act, became null and void on the 11th February, 1853, and will not support an action, (instituted before the passage of the act,) unless there was some effort to survey before the expiration of the time. (Paschal's Dig., Art. 4562, Note 1007.)

In the case of Edwards v. James, 13 Tex., 52, the party had sued out a *mandamus* to compel a survey, and the court said, "It is not believed to have been intended to embrace a case like the present, where there were legal impediments to the survey that could only be removed by an adjudication on the locator's right to have the land selected, located, and surveyed." The court will not extend the exception beyond the class of cases here contemplated. (Paschal's Dig., Arts. 4562, 4568, Notes 1007 and 1009.)

It is not enough to have demanded the survey, and that the survey was refused because of conflict with a title afterwards in a suit between third parties adjudged to be void.

Where the wife averred that she sued for her separate property, and the only evidence produced was a deed of bargain and sale to the wife during coverture, such a deed raises a presumption that the land belongs to the community, and it does not support the averment of separate property.

The *husband can sue for the separate property* of his wife alone or jointly with her, and evidence showing it to be her separate property will be sufficient to support the issue. But if it be sued for as the separate property of the wife, and that be the issue, evidence to support her right must be adduced; and if it be proved that it was community property, the action will fail. (Paschal's Dig., Art. 4636, Note 1043.)

Where, in the original petition, it was averred that the certificate was the property of the husband, if he be not estopped by such averment, certainly the wife cannot, by an intervention in which she is joined by the husband, change the character of the title to the property purchased from community property to the separate estate of the wife, and thereby defeat a defense which would be good against the original action.

ERROR from San Augustine. The case was tried before Hon. A. W. O. HICKS, one of the district judges.

This was a three-cornered fight. The record is exceedingly voluminous, and the briefs of the counsel printed and written are little less so.

The following statement of pleadings and facts is principally copied from the brief of *Donley & Anderson.* It does not materially differ from the printed summary by Messrs. Wallace, and perhaps it is more full than is necessary in the view taken by the learned judge who delivered the opinion; but as the case was remanded for a new trial, the report cannot be too full.

On the 18th of October, 1851, Daniel Holloway, as the attorney in fact of John Holloway, instituted suit in the district court of San Augustine county against Simpson Holloway and Humphrey Bate, surveyor of San Augustine county, alleging that in September, 1844, the said Daniel, as the agent of the said John, caused the head-right certificate of the said John, which is alleged to be genuine, and recommended as such, to be filed in the county surveyor's office of San Augustine county in two files, on land that was vacant. It is alleged that twelve hundred and ninety-nine acres is situated in San Augustine county, on the waters of the Attoryac, south of a three hundred and twenty acre survey made for H. C. Watson, and northwest or Samuel Stedham's survey and one labor of said certificate, located west of a labor survey made for Simpson Holloway, and north of Mary Ward's survey. That the land is within the limits of a pretended grant called the Greene claim, and for that reason the county surveyor could not survey it.

It is further alleged that Simpson Holloway, well knowing that petitioner had filed on the land, did, on or about the 20th of April, 1850, make a file on the land previously filed on by petitioner as aforesaid, and that after the making of said file, to wit, about the 22d of April, 1850, the said Simpson Holloway illegally and fraudulently procured

Humphrey Bate, the county surveyor of San Augustine county, to survey a part of the land filed upon by defendant in error, say six hundred and forty acres, and was about to record the field-notes, and certify the same to the commissioner of the general land office, so that said Simpson Holloway might obtain a patent for said land. An injunction is prayed for and granted, restraining said Humphrey Bate from recording, and said Simpson Holloway from forwarding, the field-notes to the general land office for patent.

Exceptions and answer of plaintiff in error, on the ground that the file of defendant in error does not specify with any certainty the lands pointed out and designated for survey by virtue of said certificate. A general denial is filed, and we believe there is no fact alleged or evidence offered that was not equally available under the general denial.

There was amended answer of plaintiff in error, alleging that he had notice (we suppose he intended to say he had no notice) of the file of defendant in error, until after the suit of Edwards · v. Davis. [3 Tex., 321.] It is further alleged that defendant in error abandoned his location, by not having the survey made and returned to the general land office for patent, averring that there was no legal impediment to have prevented him from having said survey made and the field-notes returned to the general land office. Answer of Humphrey Bate, that he made the survey for Simpson Holloway, as deputy surveyor of Benjamin F. Price, who was at that time surveyor of San Augustine county; that he returned the field-notes of said survey to said Price; and after the expiration of Price's term of office he, Bate, was elected in Price's stead, and took possession of said office, and there found the field-notes of the survey made for said Simpson Holloway partly recorded; that he completed the record, and delivered the field-notes and certificate to said Simpson Holloway; that after that he found in an old file-book the file described in the petition for the

injunction, alleged to have been made for said John Holloway.

There is no offer by him to survey for defendant in error the land claimed by him.

There is amended answer of plaintiff in error, alleging that defendant in error did not use diligence in having the survey made, and that he, plaintiff in error, had no notice of said file when he made his application for survey, and further averring, that he had ten years' peaceable possession of said land, &c. There is an amendment of plaintiff in error, averring that he had purchased the certificate of John Holloway, located on said land, &c. There is an amendment by plaintiff in error, alleging that no application had been made to have said land surveyed, and no refusal by the county surveyor to survey is averred; and an amendment by plaintiff in error, in nature of exception, that the location of defendant in error is wanting in certainty, &c., and, if ever made, was abandoned, by not being returned to the general land office in a reasonable time, &c. And further amendment by plaintiff in error, that he was the owner of the certificate of John Holloway; that he purchased without notice, &c.; no averment that he paid anything. The intervention of Elizabeth Holloway averred that she is the owner of the certificate of John Holloway and the land in controversy; that she purchased in 1851, &c. There was an amendment by defendant in error, alleging, that if plaintiff in error ever purchased the certificate of John Holloway, he knew it was the property of said Elizabeth.

The charges of the court are set out in the opinion. They are given in *extenso* in the brief of Mr. Wallace.

Verdict and judgment making injunction perpetual. Simpson Holloway is adjudged to recover of John all costs that had been incurred, &c. It is further decreed and ordered by said judgment, that the county surveyor

survey the land set out in the petition as having been located by virtue of John Holloway's certificate.

The plaintiff introduced B. F. Dexon, who testified that he was county surveyor of San Augustine county on the 29th of September, 1844; and a file-book of the said office was shown him, which he proved was the book of files in 1844, and the two files of John Holloway's certificate were in his handwriting. Said files were made by Daniel Holloway, as the agent of John. The land was then represented as vacant, or belonging to the Government. The files, as stated in the plaintiff's petition, were proved. A few months after the files were made, some person applied to have a survey made of the land filed on by virtue of the John Holloway certificate, and his deputy refused to make the survey, on account of some alleged conflict in relation to the land filed on. It was admitted on the trial that the land filed on was within the survey known as the Guerrero claim or survey, and was not determined when this survey commenced. It was admitted that the John Holloway certificate was recommended as genuine. The identity of the land was admitted on the trial.

The power of attorney from John to Daniel Holloway was read without objection. Deed from John to Elizabeth Holloway alleged to be for a valuable consideration. It was admitted that Elizabeth Holloway was the wife of Daniel Holloway. On the part of the defendant the file-book was produced, from which it appeared that he had filed his bounty-land warrant in 1846. It is admitted that the defendant caused said location to be surveyed. It was admitted by plaintiff that the suit involving the validity of the Guerrero grant, within which all the files were made, was decided in the district court of San Augustine county, at the spring term, 1851, and the judgment of the court, declaring the Guerrero grant void, was affirmed by the Supreme Court in 1853. And it is also admitted that plain-

tiff never caused any survey of the John Holloway certificate, nor have any proceedings been adopted to cause the surveyor to survey the same, except as shown in this suit. Plaintiff in error also read in evidence two deeds from John to Simpson Holloway, one dated March 22, 1856, the other May 21, 1856. The first expresses no consideration, and is not under seal. Defendant also read instructions by the commissioner of the general land office. Plaintiff in error also offered to read in evidence a deed from George S. Lucas to plaintiff in error, and to prove possession and improvements under the same.

The defendant prosecuted error. The principal assignment goes to the correctness of the instructions given and refused, and to the refusal to grant a new trial.

*Wm. W. Wallace & H. C. Wallace,* for plaintiff in error, filed a printed argument, giving the facts and making the following points:

I. By the instructions of the general land office, of February 24, 1838, which were read in evidence, each surveyor was required to keep a book of entries, and note as far as possible the precise location of the land entered, and in no event to make an entry without taking possession of the certificate. In 1846, Simpson Holloway located a land warrant of six hundred and forty acres, which had been issued to him for his participation in storming San Antonio, on a part of the land in the neighborhood embraced in the descriptive file of John Holloway. His location was duly surveyed, and the field-notes returned to the land office; but the issue of a patent was arrested by an injunction awarded on the institution of this suit.

On the 9th of November, 1857, Elizabeth Holloway intervened by petition, claiming the certificate and location of John Holloway, under a deed dated February 3, 1851, but recorded 26th of July, 1856; and Simpson Holloway claimed the same certificate and location, under a deed

from the said John, dated March 22, 1856, and recorded in June, 1856. John Holloway charges in his petition, that his location was prior in point of time, and that the defendant, knowing this, had fraudulently proceeded to survey his entry, and return the field-notes to the general land office. No proof exists of such fraud. No allegation is made that the plaintiff had applied to the surveyor to survey his location, or that the surveyor had refused to make such survey. It is merely charged that this file was within the Guerrero grant, and no survey of such file could be made under the land office regulations.

II. The defendant, among other things, plead in bar of the action his own entry, and that the entry of the plaintiff was void, because it was vague and uncertain; that the plaintiff had failed to have the same surveyed, and the field-notes returned to the general land office, as required by the act of 1852, and in consequence of such failure his entry was void, and the land subject to re-location; that the defendant was a *bona fide* purchaser of John Holloway's certificate, without notice of the intervenor's claim, and for a valuable consideration; and that he was a claimant in good faith of the land in controversy, having held it adversely for more than one year, and had erected on it improvements of great value, for which he claimed compensation. Upon these issues, a verdict was found for the plaintiff, under the instructions of the court; a new trial was refused; and the case comes up for re-examination on the points suggested in the assignment of errors.

III. An argument, showing affirmatively what instructions should have been given, will be adopted as the most convenient and succinct mode of pointing out the errors contained in the instructions of the court to the jury, and the errors committed in refusing such as were asked by the defendant. Whatever may have been the doubt once entertained of the right of a locator to institute an action on an interest in land created by a mere entry, it no longer

exists.   The act of February 5, 1841, expressly authorizes
the use of any legal remedy given by law to maintain a title
acquired by any certificate, warrant, or other evidence of
right to land, which has been located or surveyed.   But
such location to confer this right must be valid.   If it is too
vague or uncertain to give notice to subsequent locators,
or to authorize a judgment for its recovery, it does not
amount to an appropriation of the land, and is void.   Such
is the real condition of the plaintiff's location.

IV.  The regulations of the general land office of 1838,
which have been recognized by this court as a part of our
land system, require each surveyor to keep a book of
entries, and, "as far as possible, the precise location of the
land" is to be entered in said file-book; and in Hollings-
worth v. Holshousen, 17 Tex., 44, this court decided that
a location should be sufficiently specific and certain to
identify the land which it is intended to appropriate.

"Entries made in a wilderness most generally refer to
some prominent and notorious object, which may direct at-
tention to the neighborhood in which the land is placed, and
then to some particular object which shall exactly describe
it.   The first of these has been denominated the general
or descriptive call, and the last, the particular or locative
call of the entry.   Reasonable certainty is required in both.
If the descriptive call does not inform a subsequent locator
in what neighborhood he is to search for the land, the
entry is defective, unless the particular object be one of
sufficient notoriety.   If, after having reached the neigh-
borhood, the locative object cannot be found within the
limits of the descriptive call, the entry is equally defective."
(Johnson v. Pannels' Heirs, 2 Wheat., 79; McDowell v.
Peyton, 10 Wheat., 454.   Similar principles are main-
tained in Matson v. Hord, 1 Wheat., 130.)

[These opinions of Chief Justice MARSHALL were quoted
at length.]

These principles, it is true, were established by the Su-

preme Court, in cases arising under the Kentucky law, which required locations to be sufficiently certain to enable a subsequent locator to appropriate the adjacent residuum; but they are founded in enlightened reasons and convenience, which place their authority far above the positive provisions of a local law, and render them applicable to all locations. So the Supreme Court actually held, in Littlepage v. Fowler, 11 Wheat., 215, where the question was whether an entry contained that legal precision which the land laws of Kentucky required, the defendants maintaining it was too vague and misleading. " On this subject," says the court, " the rule of law of that State, and the rule of reason is, that the objects called for to designate the land appropriated should be specific."

Where it is sold, the title does not pass until it is separated by marks of discrimination from the bulk with which it was intermixed. (Story on Sales, § 296; 2 Story on Cont., § 800.)

V. A judgment is always presumed correct until the contrary is shown, and, while it remains in force, is conclusive. (Wallace v. Upshur, 4 Bibb, 509; Rochester v. Anderson, 3 Bibb, 339; Haden v. Boothe, 2 Marsh., 353; Callison v. Astry, 4 Tex., 371; Cussy v. York, 3 Tex., 357.) Neither an appeal, *supersedeas*, nor writ of error annuls or impairs the judgment. Their sole effect is to suspend the execution of the judgment (Chambers v. Miller, 7 Tex., 75,) pending its re-examination in the appellate court; and a judgment of affirmance neither satisfies, merges, nor extinguishes the judgment in the court below, (Planters' Bank v. Calvit, 3 Smedes & Marsh., 143;) but leaves it unchanged, to take effect, according to its own nature, priority, and force.

[This point was elaborated; but the validity of that judgment, declaring the Guerrero grant void, seems not to have been questioned.]

VI. An equitable construction of a statute may, in some

cases, arise from the existence of a legal impediment or *vis major*, recognized by law, which cannot be averted or controlled, but is never founded on the claimant's voluntary negligence. *Vigilantibus, non dormientibus, leges subveniunt.* It can only exist in such a case as this, where the interposition of a court of justice is necessary and is actually, but fruitlessly, invoked for the removal of the alleged impediment. So this court held in Edwards v. James, 13 Tex., 52. The act of 1852 was intended, says the court, to put an end to the negligence of locators; but it was not intended to embrace a case where there are legal impediments to the survey, which can only be removed by an adjudication.

VII. Unanswerable objections exist to the instruction of the court. It is erroneous and misleading, because no such principle as a reasonable time to survey locations has existed in this State since the passage of the act of 1852. Because the act of 1852, which is retroactive and a mere statute of limitations, required all existing locations to be surveyed in twelve months from its passage, instead of a reasonable time, which had been the rule of prior adjudications. (Lewis v. Durst, 10 Tex., 415; Williams v. Craig, 10 Tex., 438.) It is in direct antagonism with the limitation prescribed by this act, which repealed the former rule.

VIII. The court erred in excluding the evidence of the defendant to prove his occupancy and possession of the disputed land from 1839, under the conveyance to him from Lucas, seven years before the plaintiff's entry, his continued and adverse possession afterwards under his own entry, and the erection of valuable improvements on the land worth $1,000. Repeated decisions of this court, and acknowledged rules of equitable jurisprudence, have settled the right of a claimant in good faith with an adverse possession, whether his title is legal or equitable, to recover the value of his ameliorations of the disputed estate. (O. & W. Dig., 2045; Scott v. Mather, 14 Tex., 235; Powell v. Davies, 19 Tex., 300.)

*Donley & Anderson,* for defendant in error, objected to the sufficiency of the assignment of errors. (O. & W. Dig., Art. 1947; Sims & Smith v. Chance, 7 Tex., 563.) [Various other authorities were cited; but the ground seems not to have been well taken in fact, and was not noticed by the court.]

Any right which the defendant might have acquired by virtue of or under the file and location, was lost by the failure of defendant in error to have the survey made and the field-notes returned to the general land office, as required by the act of February 10, 1852, requiring all existing locations to be surveyed within twelve months from the passage of the act, or the location should be void, &c.; and that the judgment was insufficient for want of fullness and certainty of specification, &c.; that it could not be carried into effect, and was void.

[The counsel reviewed and criticised the argument upon the uncertainty of the locations. But the court seemed not to have reached that view of the subject.

The cases from Virginia and Kentucky are very instructive, and it is to be regretted that Mr. Donley's review cannot be given. But this case turned upon the forfeiture of the location, admitting its validity, and the strength of the derivative title.]

The case of Hollingsworth v. Holshousen, 17 Tex., 44, cited by plaintiff in error, we think, gives a rule for this case. It is there held, that "a location which is sufficiently specific and certain to identify the land which it is intended to appropriate, if followed by a timely survey, is an appropriation of the land, as well before as after the survey."

This is no authority, however, as to what shall be held a sufficient and specific location to identify the land.

The pendency of the suit, for the purpose of trying the right to the location of the land in question, was, we submit, a legal and sufficient excuse for not making the survey.

Does not this case come within the principle announced

in the case of Edwards v. James, 13 Tex., 52–55.  [This case was reviewed.]

We think the petition clearly good at the time of the institution of the suit, as that was anterior to the act of 1852.    Then we submit, that it was not necessary for the plaintiff to amend, by averring matters that arose pending the suit, and show that he was within the equitable exceptions of the statute.

It is further contended in argument, that the court erred in excluding the evidence of the defendant to prove his occupancy of the disputed land from 1839, under a conveyance from Lucas, and his continued adverse possession under his own entry, and the erection of valuable improvements worth $1,000..  For this the foundation for the evidence was not laid in the pleadings of this cause.

[Here the pleadings were summed up.

There was also a long argument on the question of improvements in good faith.

Both parties argued the question of the ratification of the location and action by the brother, but this seems hardly to have a point in the decision, and hence the valuable argument is not given.]

SMITH, J.—The sale of the certificate by John to Simpson Holloway supersedes the necessity of investigating the proceedings had in the district court as between them.

On the 9th day of November, 1857, Mrs. Elizabeth Holloway, with her husband, the said Daniel Holloway, intervened in this cause, and claimed the certificate and location as her separate property, under a transfer made to her by John Holloway, in February, 1851.

The location under which she claims was made in September, 1844, (the regularity and validity of which we will not now determine;) and though the original petition was filed October, 1851, it must be held that her rights were not involved in this suit before the date of her interven-

tion. It will appear that the transfer was made to her some eight months before the institution of the suit. (8 Tex., 534.)

We are of opinion that the suit was improperly brought in the name of Daniel Hollaway, as the agent and attorney in fact of John Holloway. Suits cannot be instituted in the name of the agent; they must be brought in the name of the principal in whom the right may be, with some exceptions, as, when the contract is made in the name of the agent, or he has some interest in the subject-matter of the suit. And we are satisfied that the exception to the petition should have been sustained on this ground. (Robson v. Tait, 13 Tex., 272.)

The court, in substance, instructed the jury, that if the land located was within the limits of the Guerrero claim, and this suit was brought before the termination of the suit contesting the validity of that claim, her rights were not affected by a failure to have the survey made on the location, and refused to instruct them that the location became vacant under the provisions of the act of February 10, 1852. The act of February 10, 1852, reads as follows, to wit: "All lands heretofore located by virtue of any genuine claim to land shall be surveyed within twelve months from the passage of this act, and all lands which may be hereafter located shall be surveyed within twelve months from the date of the location, or the said locations in every case shall be null and void, and the lands be subject to relocation and survey as other vacant and unappropriated lands." [Paschal's Dig., Art. 4568.]

To obviate the effect of this act upon the location made in 1844, it is contended that the surveyor refused to survey the land because it conflicted with the Guerrero claim, then in litigation; and that it was not decided to be invalid until the spring term of the district court, 1851, and the judgment was affirmed in the Supreme Court in 1853, and that these impediments to their rights, together with this suit,

had the effect to save their rights under that location from forfeiture.

From the decisions of this court, we are satisfied that the location of 1844, if not surveyed as directed in the act of February 10, 1852, became null and void on the 11th February, 1853, and that it will not support this action, (11 Tex., 41,) unless this suit, begun by Daniel Holloway for the benefit of John Holloway in 1851, will have the effect to exempt it from the forfeiture denounced by that act.

In the case of Edwards v. James, 13 Tex., 52, the surveyor refused to make the survey according to the location, for the reason that it conflicted with an old claim, and the owner had sued out a *mandamus* against the surveyor, to compel him to survey it before the expiration of the time allowed by the act aforesaid, and that suit was still pending.

Says the court: "It is not believed to have been intended to embrace a case like the present, where there were legal impediments to the survey, that could only be removed by an adjudication on the locator's right to have the land selected, located, and surveyed."

We do not feel at liberty to extend this exception beyond the class of cases here designated, and we are not satisfied there has been sufficient diligence used in this case to place this location within the range of this exception. In the case cited, the surveyor, on demand, refused to make the survey, and thereupon the locator sued out a *mandamus* against him. All the rights of the locator and the old claimant were brought before the court, in order that the impediments to the survey might be investigated and removed by an adjudication; but if it be admitted that the rights of the real owner of this location were involved in this suit as at first filed, the proof does not show that the owner ever did, in fact, apply to the surveyor to survey the land. True, some person not named, a short time after the location, did make such an application to the deputy surveyor, and he refused to make the survey, for the reason of the conflict

xxx—12.

with the old claim. No *mandamus* has been sued out against the surveyor, or request made of him to survey the land, before or since the decision against the validity of the Guerrero claim by the courts, except as aforesaid. This suit is not brought to remove the impediments arising from the Guerrero claim, but to enjoin Simpson Holloway from perfecting his survey of six hundred and forty acres on the same land into a patent. No effort is made to enforce against the government the location of 1844.

There appears to be a want of diligence on the part of Mrs. E. Holloway in the use of the means given her by law to remove the supposed impediments to the enforcement of her rights under the location claimed by her too great to save her rights from the forfeiture under the said act of the legislature.

If it be admitted that the pending of the suit contesting the validity of the Guerrero claim furnished a sufficient excuse for not surveying the land under the location of 1844, it is admitted that this impediment was removed by the decision of the district court in the spring of 1851, or, at furthest, by the Supreme Court decision affirming that of the district court in 1853. It has not been made to appear, by allegation or evidence, that any application was made thereafter to the surveyor to survey the land, nor that any other act was done to procure the survey. Mrs. Elizabeth Holloway appears never to have done anything to enforce her rights, or to have them respected, until her intervention in this suit, some four years after the supposed impediment arising from the Guerrero claim was removed. From the foregoing reflections, we believe the district court erred in giving the instruction complained of, and in refusing to give the one referred to, as asked by the defendant below.

The issue made by Mrs. Holloway was, that the certificate and location were her separate property, and in support of it she produced in evidence the transfer from John Holloway to her, dated February, 1851, which purported

to have been executed for a valuable consideration expressed. There was no evidence that it was a gift, or that her separate property had been given in exchange for it. The rule appears to be well settled, that such a transfer to the wife raises the presumption that the property transferred belongs to the community of herself and husband, and it devolves upon her to prove the contrary, which was not attempted to be done in this case.

The husband can sue for the separate property of his wife alone or with her, and if he sues for it in his own name, and evidence showing it to be her separate property be introduced without objection, it will be held sufficient to support the issue, because he has the right to the possession and management of it, and therefore a limited interest in it. (13 Tex., 628; 24 Tex., 304.) But if it be sued for as the property of the wife, and is averred to be her separate property, that being the issue, evidence to support that right must be introduced, and evidence that the property is that of the husband or community property will not support the issue; and for the reason that the certificate was not shown to be the separate property of Mrs. Holloway, the issue was not proved by her so as to support the verdict, and for this the new trial should have been granted. (12 Tex., 412.)

It might be contended, that the averment of Daniel Holloway in the petition, that the certificate and location were the separate property of his wife, should be taken as sufficient evidence of the fact. As between them, perhaps it might be held sufficient; but when the rights of third parties are involved and affected by that fact, better evidence must be adduced.

In the original petition, her husband, Daniel Holloway, stated, under oath, that the certificate was the property of John Holloway, for whose benefit he sued; and the fact may be, that the defendant, Simpson Holloway, relying upon the truth of this averment in good faith and without

any notice of the transfer to his wife, Elizabeth, did purchase it of John Holloway, in 1856, for a valuable consideration, then paid; and, if that be the case, it is believed that Daniel Holloway would be estopped from denying the truth of his averment. And it is very apparent, if he could, by a mere allegation in his petition, change the *prima facie* character of the title to the property purchased from community to the separate property of his wife, he thereby, with great facility, might deprive the defendant of a just defense. We are of opinion, more satisfactory evidence of it being her separate property must be produced. (Hatchett v. Conner, 23 Tex., 613; this term at Tyler,) [*ante,* 104.]

The judgment below is reversed, and cause remanded for further proceedings, in conformity with this opinion.

REVERSED AND REMANDED.

[Donley, J., having been of counsel, did not sit in this case.]