[Opinion delivered October 28, 1884.]

---

G. W. BONNER v. I. M. DALE ET AL.

(Case No. 1671.)

1. BOUNDARY — CHARGE OF THE COURT.— In an action to settle boundary, a charge as to whether one of the contiguous tracts of land is separate or community property is unnecessary. *Vide* Higgins v. Johnson, 20 Tex., 389; Holloway v. Holloway, 30 Tex., 164.
2. SAME — FACT CASE.— See facts in opinion of the court where a charge under those facts was held good as to the character of a boundary line, and the acquiescence of parties to that line.

3. SAME — MEASURE OF DAMAGES.— A charge relating to the measure of damages sustained by reason of interference with the erection of a certain wall, to the effect that the measure of damages sustained by reason of such interference is the difference in the cost of erecting the wall as commenced originally and its cost upon completion as the party was afterwards compelled to build it by reason of the interruption, was proper.

APPEAL from Johnson. Tried below before the Hon. Jo Abbott. Mrs. Dale and the other appellees owned lot 3, block 3, in city of Cleburne. G. W. Bonner and his wife owned the adjoining lot 4. The appellees had a brick store-house on their lot. Bonner had erected a wooden building upon his premises. This last mentioned building was destroyed by fire in April, 1882, and, as it abutted upon the brick store, the latter was damaged also. To repair this damage, appellees, under the advice of skilled mechanics, proceeded to erect a new wall, and, as they alleged, with the consent of Bonner. After the work had progressed a day, Bonner compelled the workmen employed in its erection to cease, forbade their continuing, and prevented the work from proceeding further. This suit was originally brought by appellees to recover damages for this dispossession, but the most important matter was the dispute as to the boundary line between the two lots. As a full account is given in the opinion it need not be set out here. Appellees obtained a judgment for the disputed boundary line, as contended by them, and $1,150 damages, but filed a remitter of $829.50. Bonner appealed.

*Poindexter & Padelford* and *De Berry & Smith*, for appellant.

*Bledsoe & Fisher* and *Brown, Ramsey & Crane*, for appellees.

DELANY, J. COM. APP.— The first and second assignments of error will be considered together.

One of the links in the chain of title down to the plaintiffs was a deed from J. E. Lorance to Mrs. I. M. Dale and Mrs. Lizzie D. Hutcheson.

At the date of the deed Mrs. Hutcheson was a married woman, the wife of her co-plaintiff, J. T. Hutcheson.

The defendants asked a charge to the effect that the interest thus conveyed to Mrs. Hutcheson was presumptively a community interest, and that the facts would not sustain the allegation of the plaintiffs that it was her separate property.

The charge was refused on the ground that the defendants, in their pleadings, had recognized J. T. Hutcheson as the agent of the other plaintiffs, and that this fact, taken in connection with the

evidence, justified the refusal. The evidence showed that J. T. Hutcheson had purchased the property for his wife and Mrs. Dale.

We do not think that the court erred either in refusing the charge asked or in the general charge to the effect that the deed was sufficient. Higgins v. Johnson, 20 Tex., 389.

Counsel for appellant, in support of their views, refer us to the case of Holloway v. Holloway, 30 Tex., 164. There the plaintiff sued for a piece of land as her separate property, and the only evidence of her claim was a deed to her during her coverture.

As there was no other evidence but the deed, the court held that the property was presumptively community, and that she could not recover in her separate right.

Here, however, there was other evidence. Besides, in this case, the contest was not so much one of title as of boundary.

The titles of the parties respectively in lots 3 and 4 were not disputed. The question was, to which of the lots did the strip of land belong?

The third and fifth assignments are waived, and the fourth is unimportant.

The sixth, seventh, eighth and ninth assignments may be considered together.

The town of Cleburne was laid out in 1867. Block No. 3 is north of the public square. It fronts south on Henderson street, and to the west on Main street.

The southern front is two hundred and ten feet, and is divided into eight lots, which are numbered consecutively from 1 to 8 — lot No. 1 being on the west, and lot No. 8 on the east. Each lot fronts on the street twenty-six feet three inches, and runs back eighty feet. Soon after the town was laid out a brick building was erected on lot No. 1, which is called in the record the Taylor building. When this Taylor building was erected, and for many years afterwards, it seems to have been generally supposed that its southwest corner was the southwest corner of lot No. 1, and of the block.

Buildings were afterwards erected upon lots 2, 3 and 4 upon this supposition.

In 1879 the plaintiffs bought lot 3, and in 1880, when they proposed to put up a brick building upon it, they had a survey made from the southwest corner of the Taylor building to ascertain the exact eastern boundary line of lot 3; and they erected their building so that the outer edge of the east wall was one inch and a half within the east boundary line of the lot, as it was then supposed to be.

A wooden building upon lot 4 belonged at that time to one Earl, and, by an amicable arrangement, he extended his roof over this little space and attached it to the building of plaintiffs.

About the year 1881 Dr. Merrill owned lot No. 5 and the plaintiffs had bought lot No. 6, and they were preparing to build upon their respective lots. The defendant also contemplated building on his lot, No. 4; and he ordered a survey of the south front of the block (or a part of it), commencing, it seems, at the southeast corner. Doubts having arisen about the correctness of the lines between the several lots, a careful resurvey was made of block No. 3 and the adjoining blocks, when it was found that the southwest corner of the Taylor building was about nine inches west of the southwest corner of the block. This, of course, would remove the lines of all the lots nine inches farther east than they had been supposed to be.

The discovery disconcerted the plans of the plaintiffs and Dr. Merrill, and earnest consultations were had between them and the defendant and other owners of lots.

It was finally proposed that they should all enter into a written agreement to make the southwest corner of the Taylor building the initial point, and thus keep the lines of the various lots in the positions which they had been supposed to occupy.

The defendant refused to consent to this, and insisted that his lot should be where the law placed it,— that is, its locality should be determined by the recent survey.

The plaintiffs and Dr. Merrill were compelled to yield, so far as the erection of their new buildings was concerned, and the former gave up to the latter a strip off the west side of this lot No. 6.

Of course the defendant could not insist on adhering to the new survey so far as it affected the lines of lots 4, 5 and 6, and yet maintain the *status quo* as to the lines of lot 3.

When, therefore, the plaintiff, J. T. Hutcheson, soon after these events, called upon him to move his wooden building, which stood on lot 4, further east, so as to vacate the little strip of ground which the late survey gave to lot 3, he appears to have consented after some delay.

We have thus condensed the substance of a large amount of conflicting testimony.

The defendant denies many of the facts stated above, but the verdict of the jury is against him, and there is in the record ample evidence to sustain the verdict.

In the assignments of error last above mentioned, the defendant

questions the several charges of the court upon this part, of the case.

But in our opinion there was no error in these charges. They were adapted to every phase of the evidence; were full and clear and eminently impartial.

Thus matters stood when, in April, 1882, the defendant's building on lot No. 4 was burned to the ground. The fire greatly damaged the eastern wall of the brick building on lot No. 3.

The plaintiff Hutcheson's testimony presents this part of the case thus: Within a day or two after the fire he ascertained from skilled mechanics that, instead of taking down his eastern wall, he could repair the damage by putting up an eight-inch supporting wall on the ten-inch strip of ground and fastening it securely to the damaged wall. This, of course, would require the workmen, while performing the work, to stand upon a part of the now vacant lot No. 4. Knowing that the defendant contemplated building on lot 4, he went to him, told him of his plan of building the eight-inch supporting wall, when defendant answered that it was a good idea. Hutcheson then asked the defendant how long it would be before he would be ready to build, and was informed that it would be some time, as defendant had no money on hand, whereupon he started the mechanics to work on the wall and made arrangements with the insurance company to pay for the work and material. On the evening of the first day, when the wall was two feet above the ground, and four days more would suffice to complete the work, the defendant drove the workmen away, threw their mortar boards and implements off the lot, and that night barricaded the lot with loaded wagons carted in so as effectually to stop the work. This, it appears, wholly thwarted the plans of the plaintiff, and added largely to the delay and expense of the undertaking.

The plaintiffs set up these facts as a part of their claim of damages.

The evidence on the point was conflicting.

Upon this part of the case the court charged that if Bonner had given Hutcheson permission to enter upon lot 4 to build the wall, or had used language to him respecting the matter from which a reasonably prudent man might infer a permission, and had afterwards put a stop to the work by driving off the workmen, etc., then the plaintiffs might recover damages. And the measure of damages would be the difference between the cost of the work as originally commenced, and its cost as the plaintiff was afterwards compelled to complete it by reason of the interruption.

The court also charged that if the defendant had given no permission, and had said nothing from which a reasonably prudent man could infer a permission, then the plaintiffs were not entitled to damages.

Several of the assignments of error are founded upon this part of the charge.

As the plaintiff did not claim the right to enter upon lot 4 for the purpose of building the wall, we need not inquire whether he had the right to do so.

. But there are many cases in which an entry upon the land of one man by another is justifiable. And in the case of Carpenter *v.* Halsey, 57 N. Y., 657, it was held that when A was building a partition fence between himself and B, he had a right to go upon B's land for the purpose of building the fence. The case, however, is very meagerly reported, and we express no opinion on the subject.

It must be admitted that in the case before us very slight circumstances would justify Hutcheson in inferring the consent of the defendant to his entry upon the lot, and we therefore find no fault, with the charge of the court.

The assignments of error and the arguments of counsel proceed on to other questions; but we think the principal points have been disposed of.

This case strikingly illustrates "how great a matter a little fire-kindleth."

The paper contained in the record will more than cover every inch of the land in dispute. The arguments of counsel are voluminous,. and, we must add, elaborate and able; but we think that the ends of justice have been attained, and we will not extend this opinion further.

We recommend the affirmance of the judgment.

Affirmed.