Charles Laufer, Jr., et al. v. Lavinia Powell et al.

Decided December 10, 1902.

**1.—Will—Contingent Effect—Probate—Collateral Attack.**

A will, in the form of a postscript to a letter, made disposition of the property of testator, then upon a journey, "should I die on my route," and was duly admitted to probate on his death. Held, that the disposition of his estate so made could not be defeated, in a suit to recover property claimed under the devisee, by the fact that the testator died, not on the journey in question, but after his return.

**2.—Wife's Separate Estate—Deed—Community Property.**

A deed to a married woman "to have and to hold and enjoy and dispose of the said land in any and every manner she may think proper for her own use, benefit, and behoof," conveys it to her in her separate right, and not as community property.

**3.—Same—Words Granting Power of Disposition to Wife.**

Words granting the wife power to dispose of the property conveyed without her husband joining, though ineffective for that purpose, may be held to evidence an intention to make it her separate property.

**4.—Wife's Separate Property—Innocent Purchaser.**

One buying, from the husband alone, property which was conveyed to the wife by deed making it her separate estate can not be protected as an innocent purchaser.

**5.—Inheritance—Husband and Wife.**

Under the Act of January 28, 1840, the surviving husband did not inherit from a wife who left a surviving child.

**6.—Statute of Frauds—Verbal Exchange.**

Though a verbal partition of lands may be good, a mere verbal exchange is within the statute of frauds. The owner could not pass title to one having no interest in a tract of land by accepting, instead, the whole of another tract owned by them jointly.

**7.—Husband and Wife—Sale to Pay Wife's Debt.**

Lands, the separate estate of the wife, can not be sold by the husband alone to pay her debts.

**8.—Deed—Interest in Undivided Half.**

A conveyance of the grantor's right to an undivided half of 2500 acres to which she was entitled as a widow of one owning a tract of 3320 acres, commuity property, does not convey her half interest in the entire tract.

**9.—Charge—Questions of Law.**

A charge was properly refused which submitted to the jury, for their finding of fact, questions of law arising on the effect of written instruments.

**10.—Charge.**

A requested charge was improper, which gave the benefit of a defense to all the defendants, when available to only certain ones of them under their pleadings.

**11.—Separate Property—Land Certificate—Headright Grant.**

Under the Act of January 29, 1840, which provided that lands to which the wife had any claim at the time of her marriage, should be her separate property, her community interest in a headright certificate issued, after her second marriage, under special act, to the heirs of her former husband, became her separate estate, and her then husband took no interest in it.

Appeal from District Court of Bastrop County. Tried below before Hon. Ed. R. Sinks.

*Jones & Jones, J. P. Fowler,* and *Robson & Duncan,* for appellants.

*Orgain & Maynard* and *Brown, Lane & Garwood,* for appellee.

KEY, ASSOCIATE JUSTICE.—On March 30, 1831, the government granted to Richard Andrews one-fourth of a league of land, as a single man; and on November 23, 1832, it granted to him an augmentation of three-fourths of a league as a married man. Richard Andrews was killed at the battle of Concepcion, on October 28, 1835, and left surviving him two brothers, a sister, and two women, each claiming to have been his wife, and an infant child, born to him by one of the alleged wives, which child died in January, 1836. One of the alleged wives was known as Parthena Andrews, and the other, who was the mother of the child referred to, was known as Mary Andrews.

In 1837 Mary Andrews married J. G. Welschmeyer, who died in 1839. And in 1841 or 1842 Mary married W. A. Hemphill, by whom she had a daughter, Lavinia, who married G. W. Powell. Mary Andrews died in 1847, leaving her daughter Lavinia as her only heir.

March 22, 1839, Parthena Andrews executed a deed conveying to Micah Andrews property described as follows: "All my right, title, interest and claim in and to one undivided half of 2500 acres of land, to which I am entitled by law, as the widow of Richard Andrews, which said tract of land is situated in the county aforesaid, and lying upon the west bank of the Colorado River below the old San Antonio road; and is further known as a part of the land which was granted by the government to said Richard Andrews as a colonist in Austin and Williamson's colony."

March 31, 1843, Micah Andrews, joined by his brother Reddin Andrews, conveyed to Mary Hemphill, formerly Mary Andrews, all of their interest in the Richard Andrews three-fourths of a league grant; and the habendum clause in the deed reads as follows: "To have and to hold, and enjoy and dispose of the said land in any and every manner the said Mary may think proper for her own use, benefit and behoof."

On July 19, 1850, W. A. Hemphill executed a deed purporting to convey all the Richard Andrews three-fourths of a league survey, except 900 acres, to Reddin Andrews, reciting a consideration of $1200, and that $500 thereof was owing by his deceased wife Mary Hemphill to Reddin Andrews, for a debt contracted while she was a feme sole and widow of John G. Welschmeyer.

The defendants in the court below, and appellants here, claim by mesne conveyances from Reddin Andrews. July 19, 1835, Richard Andrews made a will which was probated July 29, 1839, and which will hereafter be referred to. In 1901 Mrs. Lavinia Powell, joined by her husband, G. W. Powell, commenced this suit in the form of trespass to try title, to recover from Chas. Laufer, Jr., and a number of other defendants, all of the Richard Andrews three-fourths of a league survey except "500 acres on the lower side of said survey, sold by the ad-

ministrator of Richard Andrews to one Samuel H. Reed." And thereafter Mrs. Powell died, and her heirs were made parties plaintiff.

The defendants filed elaborate answers, including pleas of limitation and improvements in good faith. At the trial it was admitted that the administrator of Richard Andrews sold 500 acres of the survey to S. H. Reed; and that Richard Andrews had given to his brobther Micah Andrews 300 acres of said survey.

It was also admitted that some of the defendants had established title by limitation, and judgment was rendered for them accordingly. It was also admitted that the other defendants had made valuable improvements in good faith; and the parties agreed as to the value of the several tracts of land, and the improvements thereon, and the decree was rendered in accordance with the agreement.

Special issues were submitted to the jury and the following verdict returned:

"1. When the grant to the land in controversy was issued to Richard Andrews, to wit, November 23, 1832, was Richard Andrews living with Parthena or Mary as his wife? State which. Answer: Parthena.

"2. Was either Parthena or Mary the lawful wife of Richard Andrews, and if so, which? Answer: Mary.

"3. Did the child born to Richard Andrews and Mary survive said Richard Andrews? Answer: Yes.

"4. Was the deed made by W. A. Hemphill to Reddin Andrews made for the purpose of paying a debt due by Mary Hemphill, his wife, and did she owe such debt? Answer: Yes.

"5. If you find that said Mary lived with Richard Andrews in any character of marriage, did she or not do so believing in good faith that she was his lawful wife? Answer: Yes.

"6. When the defendants or the ancestors of those from whom they inherited, purchased the land claimed by them, state whether or not they paid value for the same without knowledge of any claim of the plaintiffs to the same? If any had such knowledge, state their names. Answer: Yes; in good faith and full value."

Upon the verdict and the agreement referred to the court rendered judgment for the defendants who were conceded to have title by limitation; and as to the several tracts claimed by the other defendants, judgment was rendered for the plaintiffs for an undivided half interest, and in accordance with the statute as to improvements in good faith. Some of the defendants also recovered judgment over against their warrantors, whom they had impleaded. The losing defendants have appealed, and assign numerous errors.

The appellees have filed cross-assignments, their contention being (1) that they are entitled to all the land claimed by the losing defendants; and (2) if not to all, then to more than a half interest.

We shall not discuss in detail the various assignments of errors in appellants' brief. In view of uncontroverted and conceded facts, many of them relate to questions which in our opinion are immaterial.

On two vital questions in the case we sustain appellees' contention; and these questions will now be considered.

1. The will of Richard Andrews, which was added as a postscript to a letter written to his brother Micah, reads as follows: "N. B. Should I die on my route I want you to settle up all business. I want my plunder all sold with the exception of the 200 acres I gave you and the 1000 acres including my housings and farm, for Mary Andrews, and if the property overpays the amount of my debts the balance give to Mary. This is my wish. July 19, 1835. Richard Andrews. J. G. Dunn, Solomon Rhodes."

The will was probated and recorded in the probate records in Bastrop County, where the land is situated, in July, 1839. The only objection urged against it in this court is, that it creates a contingent estate, dependent upon the death of the testator during a journey he was then making; and it being shown that he did not die on that journey, the contention is that the instrument can have no force as a will, and does not vest title in anyone.

We think the objection comes too late. If the will involves a contingency, the contingency does not relate to a particular bequest, but is a condition precedent and relates to the entire instrument; and, when such is the case, the court which probates the will must determine whether the contingency has happened. In other words, the happening of the contingency is a condition precedent to the validity of the will; and it devolves upon those propounding such an instrument as a will to establish the happening of the contingency, in order to have the instrument probated. 1 Underh. on Wills, pp. 12-14; Schoul. on Wills, secs. 285-288. And it follows as a necessary corollary that anyone desiring to contest the happening of the contingency must do so in the forum where and at the time when the will is sought to be probated. This being the case, and the will having been probated, its validity as a will can not be collaterally attacked. Van Fleet on Coll. Att., sec. 585. Hence we conclude that the will was valid, and as it made a specific devise to Mary Andrews, and also made her the residuary legatee, appellees can maintain their title asserted under the will.

2. We also sustain appellees' contention that the deed from Micah and Reddin Andrews to Mary Hemphill conveyed the property to her in her separate and individual right; and, although she was then married to W. A. Hemphill, it did not become community property between them. This conclusion is based upon that portion of the deed which reads: "To have and to hold and enjoy and dispose of the said land in any and every manner she may think proper for her own use, benefit and behoof." In Pritchard v. Ames, 12 Chancery Reports, 22, the instrument under consideration contained this language: "For her own use, and at her own disposal," and the court said: "The necessary effect of these words is to give this legacy to the separate use of the plaintiff. The testatrix in using the words, 'at her own disposal,' has stated the effect she wished to be produced. Her intention was to give

the plaintiff that power of disposition which the law did not give. The words, 'at her own disposal,' must be altogether rejected if they are taken to mean nothing more than for her own use."

That case is more directly in point than any other that has come un-der our observation; and, while the instrument there construed was a will, we think the reasoning upon which the decision rests is equally applicable to a deed to a married woman in this State. The cases in which a separate estate has been created are classified as follows: (1) When the technical words "sole and separate use," or equivalent words, are used. (2) When the husband's rights are expressly excluded. (3) When the wife is empowered to do acts concerning the estate inconsistent with the disability of coverture. See 2 Pom. Eq., sec. 1102, and note.

True it is, as pointed out by counsel for appellants, that as our statute regulating conveyances requires the husband to join the wife in conveying her separate real estate, Mrs. Hemphill could not sell the land during the life of her husband, in disregard of his wish. But while such is now the law, and may have been the law in 1843, when the deed in question was made, it does not follow that the grantors in the deed knew that such was the law; and even if they did, for reasons satisfactory to themselves, they may have attempted to confer upon her a power which the law denied, and which if tested, could not be exercised. And if the language used in such attempt, though futile, clearly indicates a purpose to convey the land to Mrs. Hemphill in her separate right, then the conveyance must be given that effect. In fact the phrase "for her sole and separate use and benefit," often used and uniformly held to vest title in the separate estate of the wife, if construed literally, may conflict with statutory provisions vesting in the husband homestead and other rights in his wife's separate property and making the increase thereof community property between them; but such conflict affords no reason why the phrase referred to may not be considered in determining the purpose of the grantor.

Under statutory provisions long in force in this State, no matter how much grantors in conveyance to married women may attempt to do so, husbands can not be deprived of their right to control and manage the separate property of their wives; nor can wives convey their real estate without the consent of their husbands. But because this is the law, it does not follow that the purpose to convey property to a married woman in her separate right may not be evinced by an unsuccessful attempt to place it beyond the husband's control. The language quoted from the deed here involved indicates a purpose to so vest the property in the wife as that she could sell or otherwise dispose of it without the consent of her husband; and while on account of statutory regulation the grantors could not confer such power of sale, yet the very fact that they attempted to do so indicates a purpose on their part to vest title and all beneficial interest solely in the wife. Furthermore, the language quoted from the deed in question was not entirely futile, because

under the laws of this State, a married woman may dispose of her separate property by will without consent of her husband.

Cases may be found, and some have been cited, which apply a very rigid test in determining the wife's claim of separate property. Such was, and perhaps still is, the rule of common law; but with us the rights of married women are controlled by statute, and a different rule applies. This was recognized at an early day, for in Nimmo v. Davis, 7 Texas, 33, the court said:

"It is scarcely necessary to say that the principles applied in the interpretation of words employed in instruments conveying property to married women in these courts where marital rights are governed solely by the rules of the common law, would not be applicable to instruments of like import here. The language is interpreted with great nicety to sustain the marital rights of the husband. A claim to separate property by the wife is said to be against common right. Here the policy of the law in respect to marital rights, and the respect which it pays to the wife's claim to separate property are widely different."

Hence it is our opinion, that when, in this State, an instrument purporting to pass title to a married woman indicates on its face an intention to exclude the husband as a grantee or devisee, such instrument should be construed as vesting title in the wife in her separate right, no matter what form of words are used to express such intention.

In Martin v. Bell, 70 American Decisions, 200, the language of the instrument, "shall in no case be subject to the debt of the husband," was held to vest the property in the separate estate of the wife, because that was absolutely necessary to protect it from the debts of the husband. So in this case, the language, "to dispose of said land in any and every manner she, the said Mary, may think proper," clearly indicates a purpose on the part of the grantors to place the property beyond the power of the husband to dispose of, as otherwise would have been his right; and the only manner in which that result can be attained is to hold that the deed vests the property in the separate estate of Mrs. Hemphill.

3. Our conclusions upon the questions just discussed, when applied to facts conceded in their brief, show that the appellants have no ground to complain of the judgment, though it be conceded that Parthena, and not Mary, was the lawful wife of Richard Andrews; because appellees deraign title from both Richard and Parthena—from the one by will, and from the other by deed. And although they never acquired title to all the land in controversy, they did acquire, from the two sources referred to, more than was awarded to them by the decree, as will hereafter be shown.

It requires but few words to express our views with reference to the question of purchasers in good faith. That question is based upon the proposition that the deed from Micah and Reddin Andrews to Mrs. Hemphill, in so far as the face of the instrument was concerned, vested

the property in the community estate of W. A. Hemphill and his wife. But as we hold that the deed referred to shows on its face that the property was vested in the separate estate of Mrs. Hemphill, and as no conveyance from her was produced, the claim of innocent purchaser is without foundation.

As to the questions of partition and estoppel, claiming to result from the fact that W. A. Hemphill and his daughter, Mrs. Powell, were joint owners of the land in controversy and another tract of land, and that she appropriated the latter to her own use and acquiesced in her father's appropriation of the land in controversy, a sufficient answer is that W. A. Hemphill never owned any part of or interest in the land in controversy. Mrs. Hemphill died in 1847, and at that time the Act of January 28, 1840, regulating descent and distribution, was in force, and under it, when a child survived, the surviving parent did not inherit anything from the deceased husband or wife; and therefore the transaction referred to was not a verbal partition, but rather a verbal exchange of lands, which is prohibited by the statute of frauds.

It is not deemed necessary to cite authorities in support of the proposition that W. A. Hemphill had no power to sell his wife's separate property to pay her individual debt, or for any other purpose. No conveyance not signed by both husband and wife and acknowledged in the manner prescribed by statute will divest a married woman of title to real estate that belongs to her in her separate right. Berry v. Donley, 26 Texas, 745; Taylor v. Johnson, 60 Texas, 364.

There are some other questions in appellants' brief which we deem it unnecessary to consider in this opinion. They have all been carefully considered in consultation, and our conclusion is that appellants are not entitled to any relief in this court.

However, there is merit in some of the cross-assignments presented by appellees, because they are entitled to recover more than an undivided half interest in the land involved in the appeal. The Richard Andrews augmentation grant, of which the land in controversy is a part, is denominated in the grant as three-fourths of a league; and while there is some testimony tending to show that the survey overholds, the evidence is not such as to authorize us to find definitely the amount of such excess. Therefore, we dispose of the case upon the theory that the grant contained three-fourths of a league, which in round numbers was 3320 acres. By the grant referred to, Richard Andrews acquired title to a half interest in the survey, or 1660 acres. It is conceded by both sides that he and his administrator disposed of 800 acres, which, subtracted from 1660, leaves 860 acres which passed by his will to Mary Andrews. Three hundred of the 800 acres deducted from Richard Andrews' share, passed by gift to Micah Andrews, who thereafter conveyed the entire grant to Mrs. Hemphill, formerly Mary Andrews. So by that deed Mrs. Hemphill acquired title to 300 acres, which, added to the amount obtained under the will, makes 1160 acres.

Counsel for appellees contend that the deed from Parthena Andrews

to Micah Andrews conveyed her entire interest in the Richard Andrews survey, which contention we do not sustain. However, appellants concede in their brief that the deed referred to conveyed an undivided half interest in 2500 acres, which half interest would be 1250, and the latter added to the 1160 acres makes 2410 acres, the interest which Mrs. Hemphill owned in the entire survey. In other words, at the time of her death, Mrs. Hemphill owned 241-332 of the entire grant, and her heirs, who are the appellees here, own a like interest in the land in controversy.

But as the parties desire partition, and the decree appealed from appoints commissioners for that purpose, and as partition ought to be made in the court below and not in this court, as between the plaintiffs and the losing defendants, the judgment appealed from will be reversed with instructions.

It is therefore ordered that, as between the plaintiffs and the defendants against whom the plaintiffs recovered nothing, the judgment appealed from is affirmed. As between the plaintiffs and the other defendants, the judgment is reversed and the cause remanded to the District Court with instructions to render judgment for the plaintiffs for 241-332 of the land in controversy between them, and for the defendants for 91-332 thereof; and to adjust the matter of improvements and the liability of warrantors in the same proportion. The costs of the appeal will be taxed against appellants.

*Affirmed in part and reversed in part.*

### OPINION ON MOTION FOR REHEARING.

After due consideration, appellants' motion for rehearing will be refused. But as their counsel complain because in our original opinion no direct reference is made to the question presented by appellants' fifth assignment of error, we have concluded to state our reasons for not sustaining that assignment; and the reasons stated are equally applicable to the question of partition presented by the fourth assignment, and adverted to in the original opinion. The fifth assignment complains of the refusal of the trial court to give a special instruction requested by all of the defendants and reading as follows:

"If you believe from the evidence submitted to you that W. A. Hemphill sold the land in controversy with covenants of general warranty; and if you believe from the evidence that W. A. Hemphill is dead; and if you believe that said W. A. Hemphill owned an interest in the said J. G. Welschmeyer league in Bastrop County, Texas; and if you believe that the plaintiff, Mrs. Lavinia Powell, was heir at law of said W. A. Hemphill and that he died without a will, and if you believe from the evidence that Mrs. Powell inherited the interest of said Hemphill in the Welschmeyer league; and if you believe that the interest of said Hemphill in the said J. G. Welschmeyer league was equal in

value to the interest of the plaintiffs in the land in controversy, then I charge you to find a verdict for the defendants."

This instruction was properly refused for three reasons:

1. Whether or not W. A. Hemphill had sold the land in controversy with covenants of general warranty, and whether or not he ever owned an interest in the Welschmeyer league, were questions of law only, arising upon undisputed facts, and such questions of law should not have been submitted to the jury for them to decide.

2. Some of the defendants had limited their defense on the ground referred to in the special charge by averments in their answer to the effect that W. A. Hemphill was entitled to one-third interest in the Welschmeyer land by virtue of his being the surviving husband of Mrs. Hemphill; and, as held in our original opinion, as Mrs. Hemphill left a surviving child, W. A. Hemphill, her husband, inherited nothing from her; and therefore the title asserted by the defendants referred to utterly failed; and, whatever may have been the rights of other defendants, the defendants who filed the special plea referred to were not entitled to have the issue referred to submitted to the jury, and as the refused instruction embraced all of the defendants, it was properly refused.

3. Aside from the form of the requested charge, and from any question of pleading, we hold that the testimony did not call for any charge on the subject referred to, because, in our opinion, W. A. Hemphill never owned any interest in the Welschmeyer land. The facts bearing on that question are as follows:

In 1837 Mary Andrews, the plaintiffs' ancestor, married J. G. Welschmeyer, who died in 1839. About 1841 his surviving wife married W. A. Hemphill, and in 1847 Mrs. Hemphill died, leaving as sole heir her daughter Lavinia, who afterwards married G. W. Powell, and instituted this suit to recover the land in controversy. May 11, 1846, the Legislature of Texas passed a joint resolution for the relief of the heirs of John G. Welschmeyer, which reads as follows:

"Whereas, the board of land commissioners for the county of Harrisburg, having issued to John G. Welschmeyer his headright certificate for one league and labor of land; and whereas, the board of traveling commissioners having rejected the same upon the ground that the former husband of the wife of the said John G. Welschmeyer having drawn the same quantity of land; and whereas, the Constitution of the Republic of Texas plainly and expressly declares that every head of the family shall be entitled to one league and one labor of land, and that said John G. Welschmeyer, by virtue of his marriage, is, in the language of the Constitution, the head of a family, and in order to protect and secure to the heirs their constitutional rights, therefore:

"Sec. 1. Be it resolved by the Legislature of the State of Texas, that the Commissioner of the General Land Office be, and he is hereby authorized and required to issue to the heirs of John G. Welschmeyer the headright certificate of the said Welschmeyer for one league and labor of land.

"Sec. 2. Be it further resolved, that this resolution take effect from and after its passage."

The certificate referred to was issued May 11, 1846, and was afterwards located on the land referred to in the special charge under consideration as the J. G. Welschmeyer league. There was also testimony showing that the Welschmeyer land was superior to the land in controversy; and that Mrs. Powell, with the acquiescence of her father W. A. Hemphill, had appropriated all of it to her use; and W. A. Hemphill had sold the land in controversy by general warranty deed, and neither Mrs. Powell, her husband, nor any of the plaintiffs had ever asserted title thereto or paid taxes thereon until this suit was filed in March, 1901.

Counsel for appellants contend that the land certificate issued by authority of the joint resolution of the Legislature was personal property; that Mrs. Hemphill, by reason of her former marriage to Welschmeyer, was entitled to one-half thereof, and that under the fourth section of the act of the Congress of Texas, of date January 29, 1840, adopting the common law of England, Mrs. Hemphill's interest in the certificate became community property between herself and W. A. Hemphill, who was then her husband. The section referred to declares that all property which the husband or wife may bring into the marriage, except land and slaves and the wife's paraphernalia, and all property acquired during the marriage, except paraphernalia and such land and slaves or their increase as may be acquired by either party by gift, devise, or descent, shall be the common property of the husband and wife. However, the third section of the act reads as follows:

"3. That neither the lands nor slaves which the wife may own, or to which she may have any right, title or claim at the time of her marriage, nor the lands nor the slaves to which she may acquire, during the coverture, any right, title or claim by gift, devise or descent, nor the increase of such slaves in each case, nor the paraphernalia as defined at common law, which the wife may have at the time of the marriage, or which she may acquire during the coverture, as aforesaid, shall, by virtue of the marriage, become the property of the husband, but shall remain the separate property of the wife."

Sections 3 and 4 must be construed together, and it is quite apparent that the former operates as a limitation upon the latter, and excludes therefrom all lands and slaves to which the wife had any right, title or claim before coverture, or to which she acquires any such right during coverture, by gift, devise or descent. Counsel for appellants, on page 23 of their brief, concede that Mrs. Hemphill was not an heir of J. G. Welschmeyer; and if that statement be correct, and we are to look alone to the granting clause of the joint resolution of the Legislature, and the certificate and patent issued thereunder, granting the land to the heirs of John G. Welschmeyer, it would seem that Mrs. Hemphill never owned any interest in the Welschmeyer land. But if it be

conceded that she did, and that the certificate by virtue of which the land was acquired was personal property, it does not follow that her interest was community property between her and Hemphill, merely because she was married to him at the time the certificate was issued.

In Welder v. Lambert, 91 Texas, 510, it was held that although, under our statute and under the Spanish law, the presumption of community property arises from the naked fact that it was acquired during the marriage; yet when, upon an exhibition of the whole title, it appears that its origin preceded the marriage, that presumption no longer prevails, and the property should be held to belong to the separate estate of the spouse to whom it is granted, although no other right than an equitable claim existed at the time of the marriage. The doctrine taught by that case is applicable to this. By reason of his compliance with the law regulating such matters, Welschmeyer was entitled to obtain from the government a league and labor of land. That was a claim to land. It had been approved by one board and rejected by another, when appeal was made to the Legislature, and that body recognized the claim as just and provided for its satisfaction by directing the issuance of a certificate for a league and labor of land. But the claim existed before that certificate was issued; and being a claim for land, Mrs. Hemphill's interest therein was controlled by the third section of the statute, and was her separate property. Hence we hold that whatever interest Mrs. Hemphill had in the Welschmeyer land was her separate property, and that W. A. Hemphill never at any time owned any interest whatever in the land.

*Motion overruled.*

Opinion delivered January 21, 1903.

Writ of error refused.