## WAGGONER BANK & TRUST CO. v. WARREN.

(Court of Civil Appeals of Texas. Texarkana. Nov. 21, 1912.)

BANKS AND BANKING (§ 131*)—DEPOSITS BY HUSBAND—LIABILITY OF BANK.

Sayles' Ann. Civ. St. 1897, art. 2967, giving the husband during marriage sole management of the wife's separate estate, invests him with such control thereof as is necessary to the proper exercise of the right, and completely suspends her management thereof during marriage so as to permit him to deal with it as with his own, notwithstanding any agreement by him with her to the contrary, except that he cannot incumber or convey it to persons having notice of her ownership, and hence though money belonging to a wife's separate estate was deposited in a bank by the wife with her husband's apparent consent under a contract with the bank, as evidenced by the passbook, that only the depositor could withdraw it, the husband could afterwards withdraw such deposit without making the bank liable therefor to the wife in the absence of intervening rights of third parties; the husband's action in withdrawing the money being a resumption of his management of the property which revoked his wife's implied agency for him in depositing the money.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 316–318; Dec. Dig. § 131.*]

---

Appeal from District Court, Tarrant County; W. T. Simmons, Judge.

Action by Cassandra Warren against the Waggoner Bank & Trust Company. From a judgment for plaintiff, defendant appeals. Reversed, and judgment rendered for defendant.

Appellee and Francis Warren were married August 3, 1910, in Ohio, and lived together as husband and wife until November 17, 1910, when, for a reason not disclosed by the testimony in the record, but because, as alleged in the pleadings, appellee had been informed that at the time he married her Warren had living a wife from whom he had not been divorced, they separated, in Ft. Worth; appellee returning to her father's home in Ohio. They never afterwards lived together. On the day, but before, they separated, appellee and Warren called at appellant's bank in Ft. Worth, where she presented to appellant's cashier, to whom several days before this time she and Warren had been introduced as husband and wife, a draft on a bank in New York for $1,500, and had the cashier to pay her on account thereof $200 in cash, to place to Warren's credit in the commercial department of the bank $600, and to her credit in its savings department $700. The draft was a part of appellee's separate estate, and the testimony was sufficient to support a finding, involved in the judgment rendered, that the cashier knew it. At the time the $700 was placed to appellee's credit, the cashier gave her a passbook in which he had noted the deposit as follows: "The Waggoner Bank & Trust Co., Fort Worth, Texas. Savings Department. In account with Mrs. Cassandra Warren"— and then advised her that "the money could not be withdrawn from the bank without sending the book to the bank, or bringing it." On the outside of the cover of the passbook a statement as follows had been printed: "Take care of this book. It must be presented when money is deposited or withdrawn. Be sure that no unauthorized person secures possession of it. If lost or stolen, notify the bank at once." In the book had been printed "rules and regulations governing deposits and payments" in the bank's savings department. Among those rules were the following: "(3) All deposits and all payments shall be entered at the time they are made in the passbook of the depositor. This book shall be the voucher of the depositor, and although the bank will endeavor to prevent fraud on its depositors, yet all payments to persons producing the passbooks issued by the bank shall be valid payments to discharge the bank. (4) Interest at the rate of 4 per cent. shall be paid on savings deposits, when the account reaches $10.00. Deposits made on or before the fifth day of any month shall draw interest from the first day of that month; those made after the fifth day of any month shall draw from the first day of

the next succeeding month, but no interest shall be allowed on any fraction of a dollar, or any fraction of a month. Money withdrawn between any interest paying period (June 30 and December 31) will be entitled to draw no interest. (5) All drafts drawn on account of deposits made in the bank must be made by the depositor, or by his or her order in writing, and on production of the depositor's passbook; but all payments made to the person producing the depositor's passbook shall be valid and good. In the event the passbook is lost, the bank shall be notified at once. When money is drawn, the book must be brought to the bank to have the payment entered therein, and in all cases in which the whole amount is drawn, the book must be surrendered to the bank. Absent depositors may withdraw their deposits on their order, properly witnessed, blanks for which purpose will be furnished by the bank on request." Appellee relied on the statement made to her by the cashier that the $700, or any part of same, he had placed to her credit in the savings department, could not be withdrawn from the bank unless the passbook was presented to it at the time the application for the withdrawal thereof might be made; and, had she known that the bank would recognize a right in Warren to withdraw it without the presentation to it of the passbook, she would not have made the deposit. She retained the book in her possession until March 20, 1911, when she sent it by mail to the bank with a letter requesting it to send her a draft or check for the $700, payable to her father, with whom she was living in Ohio. In reply to her request she was advised by the bank that on December 20, 1910, it had paid to her husband on a check therefor drawn by him in her name $600 of the amount of the deposit, and on December 29, 1910, on a similar check had paid the remaining $100 to him. On the theory that the payment to Warren was unauthorized by and therefore not binding on her, appellee sued and recovered a judgment against the bank for the $700 and interest thereon.

Bell & Milam, of Ft. Worth, for appellant. Hunter & Hunter, of Ft. Worth, for appellee.

WILLSON, C. J. (after stating the facts as above). It appears from testimony in the record that appellee and Warren were married to each other prior to the time the deposit in question was made, and it does not appear from any of the testimony that their marriage was not a valid one, or that it had been dissolved, and that they were not husband and wife at the time the deposit was made and at the time it was withdrawn. Therefore the question as to appellant's liability as claimed by appellee must be determined on the assumption that those transactions occurred at times when appellee and Warren were husband and wife.

By the express terms of the statute (Sayles' Stat. art. 2967), the husband during the marriage has the sole management of the wife's separate estate. The authority so conferred on the husband "invests him with such control and powers as are incident and necessary to the due exercise" thereof. McKay v. Treadwell, 8 Tex. 177. As incident and necessary to the exercise of the power, it has been held he may invest her money in the purchase of land and in the erection of buildings thereon (Railway Co. v. Robards, 60 Tex. 547, 48 Am. Rep. 268), may collect moneys due her as the proceeds of sales of property belonging to her separate estate (Douglas v. Baker, 79 Tex. 504, 15 S. W. 801), and may check out money belonging to her separate estate deposited in her name in a bank (Coleman v. Bank, 17 Tex. Civ. App. 132, 43 S. W. 939; Coleman v. Bank, 94 Tex. 605, 63 S. W. 867, 86 Am. St. Rep. 871). In short, he may deal with her separate estate as he might with his own, except he cannot incumber or convey it in favor of parties having notice of her ownership thereof (Kempner v. Comer, 73 Tex. 196, 11 S. W. 194); and her right, so far as the management thereof is concerned, it seems, is so completely suspended during the marriage that the validity of her acts with reference thereto must be referred to authority in her, not as the owner of the property, but as the agent of her husband. Speer's Law of Married Women, § 36. Such being the law of this state, it necessarily follows, we think, that the judgment of the court below is wrong. As we understand appellee's contention, she does not claim appellant would be liable to her had the deposit been a general one, but that it is liable because the deposit was a special one. It may be conceded that the deposit was a special one, in the sense that it was made on the faith of a contract containing a stipulation that she alone could withdraw it; but, in view of the authorities cited, we think the rights and liabilities of the parties to this litigation would not be different. In making the contract, involving as it did the control during the marriage of her separate property, appellee should be held to have made it as the agent of her husband, subject to a right in him, without prejudice to rights which third parties on the faith of it might have acquired, to revoke the agency and to resume the management of the property at any time he saw proper to do so. The fact is, it seems, however unjust it may be to the wife, the statute deprives her of and imposes upon the husband rights and duties with reference to her separate estate which cannot be affected by any agreement to the contrary. "By her marriage," said the court in Insurance Co. v. Wagley, 68 S. W. 819, "the wife lost all right to the possession and control of her property, except by permission of her husband, and then it is his contract through her as agent"; and in Laufer v.

Powell, 30 Tex. Civ. App. 604, 71 S. W. 549, where a deed contained language indicating an intention on the part of the grantors to vest title to land in the wife, "so that she could sell or otherwise dispose of it without the consent of her husband," the court said that, "on account of statutory regulation, the grantors could not confer such power of sale," and so deprive the husband of his right to control and manage his wife's separate property.

The judgment of the court below will be reversed, and a judgment will be here rendered that appellee take nothing by her suit against appellant.