JANES et al. v. GULF PRODUCTION CO. et al. (No. 1722.)

Court of Civil Appeals of Texas. Beaumont.
March 9, 1929.

Rehearing Denied March 20, 1929.

me during my old age, have granted, transferred, donated and conveyed by these presents unto the said Martha D. Janes and her heirs and assigns to have and to hold forever, all of that certain unconditional Land Certificate Numbered (124) One Hundred & Twenty-four, 4th class, and issued by the Board of Land Commissioners of Bowie County, Texas, on the 2nd day of December, A. D. 1844, to John Douthit, said certificate is for 320 acres of land, was transferred by said Douthit to me on the 28th day of Febry. A. D. 1845, and has been filed by me for survey & location with the Surveyor of Jefferson County. And I now relinquish to my said daughter and her heirs and assigns all my right, title and interest in and to said certificate & authorize her at once to assume the control and management of the said certificate and the interest hereby conveyed.

"Given under my hand near Beaumont, Texas, (with the erasure & interlineation in the foregoing line), this — day of July, A. D. 1866.

"David Jarrett, S. L.

"In presence of:
 "J. W. Jarrett.
 "W. T. Simmons."

This certificate was located on the land in controversy. In 1884, after the death of Henry S. Janes in 1880, Mrs. Martha D. Janes sold this land as her separate estate, and by her deed undertook to convey to her grantee a full, perfect, fee-simple title to all interest in the land. Appellees hold under this deed. At his death, Henry S. Janes left surviving him six children. The heirs of these children, appellants here, claiming the property as part of the community estate of Henry S. Janes and Martha D. Janes, sued for an undivided one-half interest. This claim was advanced for the first time only a short while before the institution of this suit in 1927. On the disposition we are making of the case, it is sufficient to refer only to appellees' plea of not guilty. The trial was to a jury. On a full development of all issues raised by the pleadings, a verdict was instructed for appellees on the theory that the above-quoted deed was unambiguous in its terms, and by its own language vested the certificate in Mrs. Martha D. Janes as her separate property. This appeal is from judgment in appellees' favor entered on the instructed verdict.

While appellees, under their pleas and the evidence in support thereof, offer many propositions for affirming the judgment, we agree with them that the judgment can be affirmed on the trial court's construction of the deed in question.

Appellants have filed a motion asking that we correct the statement of facts as certified to us from the trial court, and praying for a writ of certiorari directing that the

Holland & Cousins, of Beaumont, for appellants.

Orgain & Carroll, of Beaumont, John E. Green, Jr., and P. O. Settle, both of Houston, and F. J. & C. T. Duff and Oswald S. Parker, all of Beaumont, for appellees.

HIGHTOWER, C. J. This suit was instituted by appellants against appellees as an action in trespass to try title, involving an undivided one-half interest in certain subdivisions of the John Douthit survey in Jefferson county, Tex. The land is a part of Spindle Top oil field. Appellants also sued for the value of one-half of the oil taken by appellees from the land in controversy, which, on the statement made by them from the record, was in excess of $6,000,000. Appellants are the heirs, or hold under the heirs, of Henry S. Janes. In July, 1866, David Jarrett executed and delivered to his daughter, Mrs. Martha D. Janes, wife of Henry S. Janes, the following deed:

"The State of Texas, County of Jefferson.

"Be it known that I, David Jarrett of the State and County aforesaid, for and in consideration of the love and paternal affection I have and entertain for my daughter, Martha D. Janes (wife of Henry S. Janes), of the same State and County, and in further consideration of her filial kindness and attention to

lower court send up a correct copy of the Jarrett deed. Appellants assert that as offered in evidence the granting clause of this deed read: "have granted, *bargained*, transferred, donated and conveyed." The copy before us does not contain the word "bargain." The motion is of great interest to appellants, as their most important argument in construction of the deed assumes that the granting clause contained the word "bargain," and on that assumption construe the words "donated" and "bargained" together, as implying an onerous title. Appellees contest this motion by affidavits asserting that the copy in the statement of facts, which is the one we have given above, is the one actually offered in evidence, and, in fact, is a copy of the original deed. We cannot consider the affidavits of either party, as we have no jurisdiction to entertain appellants' motion. Where a statement of facts has been duly certified to us in the form required by law, we are without jurisdiction to correct a mistake therein. We are absolutely bound by the facts thus certified. Only the lower court has jurisdiction to correct such a mistake. Gerneth v. Lumber Company (Tex. Com. App.) 300 S. W. 17, 20, and authorities there cited. But, if in error in this proposition, and if it is our duty to determine the issue raised by the affidavits, the preponderance of the evidence supports the record as filed. The motion to correct is overruled.

■ Affirming this case solely upon the construction of the Jarrett deed as written, it becomes our duty to ascertain from the language of the deed the intent of the parties in its execution and delivery. In ascertaining this intent, we must give the words used their fair and reasonable meaning, according them the interpretation given by common usage, having in view the circumstances of their use and the context. The intent must not be gathered from any particular part of the instrument, but from the entire instrument, giving effect to every word therein. The intent should be consistent with all the terms used and with the scope and subject-matter of the deed. Since, in our judgment, the expressed meaning is plain, it will control. 18 C. J. 256, 257, 258. These general propositions were recognized by the Galveston Court of Civil Appeals in West v. Carlisle, 199 S. W. 518: "A safe and accurate interpretation of words used in a contract may be had by viewing the subject of contract as the mass of mankind would view it." To ascertain the intent of this deed, we must give effect to and ascertain the meaning of the following significant portions: (a) The parties to the deed; (b) consideration; (c) the granting clause.

■■ The status of property in Texas is governed by our Constitution and statutes. Property takes its status as separate or community at the time of its acquisition. The

status is fixed by the facts of its acquisition at the time of acquisition. McDonald v. Stevenson (Tex. Civ. App.) 245 S.W. 779; Creamer v. Briscoe, 101 Tex. 490, 109 S. W. 911, 17 L. R. A. (N. S.) 154, 130 Am. St. Rep. 869; Stiles v. Hawkins (Tex. Com. App.) 207 S. W. 91; Allen v. Allen, 101 Tex. 365, 107 S. W. 528. By the law at the time this property was acquired, a conveyance to either marital partner on an onerous consideration, flowing from the community, made the property conveyed a part of the community assets. But a deed of gift made the property the separate estate of the marital partner to whom it was conveyed. Yates v. Houston, 3 Tex. 433. In that case, defining an onerous title, it was said: "An onerous title is defined to be that by which we acquire anything, paying its value in money, or in any other thing, or in services, or by means of certain charges and conditions to which we are subjected." In 28 C. J. 620, the following definition was made of a gift: "A gift is a gratuity and not only does not require a consideration, but there can be none. If there is a consideration for the transaction it is not a gift." It follows, as said in Kearse v. Kearse (Tex. Com. App.) 276 S. W. 693: "'Gift' and 'onerous consideration' are exact antitheses."

■■ The usual presumption is that a conveyance to either marital partner during coverture, unless expressly negatived by appropriate language, makes the property community. However, this presumption may be met and, by proof, the actual status of the property shown. Ordinarily, the fact that the conveyance is to the wife raises no presumption of separate estate in her. But our decisions recognize certain exceptions to this general rule of construction. For instance, where the conveyance is of chattels, as in this case, by a father to his daughter, after marriage, a gift to the daughter as her separate estate is absolutely presumed, unless the deed of conveyance contains appropriate language to the contrary. This rule was thus stated, recognized, and given application in Owen v. Tankersley, 12 Tex. 405: "It appears to be well established upon authority, that when slaves or other chattels, pass from a parent to a daughter on or after marriage, a gift to the daughter is to be presumed, and that this is absolute and unqualified, unless there be some express condition or stipulation at the time of the gift to the contrary." It was said further in that case that it made no difference what the father intended; "the only question is what he did. His acts are the best, as they are the only conclusive evidence of his intentions."

■ If the issue before us was one of fact, the rule thus announced would put appellants under the burden of proving the community status of the property. But as the question is one of law on the face of the deed, the

law requires us to construe it most favorably to Mrs. Janes, and to resolve all doubtful constructions in favor of the property as her separate estate, and all parts of the deed must be made to support the presumption of a gift, if that can be done, without doing violence to the language used.

■ The recitation as to the consideration is as follows: "For and in consideration of the love and paternal affection I have and entertain for my daughter, Martha D. Janes * * * and in further consideration of her filial kindness and attention to me during my old age." Appellants concede that a consideration of "love and paternal affection," standing alone, imports a gift and is not the language of an onerous title, citing Brown v. Whaley, 58 Ohio St. 654, 49 N. E. 479, 65 Am. St. Rep. 793; 8 R. C. L. 965. However, they deduce an onerous consideration from the additional language, "in further consideration of her filial kindness and attention to me during my old age." These words must be given a fair and reasonable meaning, receiving the interpretation accorded them by common usage of mankind, having in view the circumstances of their use and context. 18 C. J. 258. This rule makes the standard lexicographers authority on "common usage." We are taking the definitions from Webster's New International Dictionary. The word "kindness" is there defined: "A kind act; an act of good will," with other synonymous meanings. It does not admit, nor does it imply, an onerous consideration, nor any obligation involving the expenditure of money or its equivalent. To deduce an onerous title from the consideration, appellants, then, must rely on the single word "attention." We give their construction in their own language:

"To give to the grantor in this instrument 'filial attention' (Filial—Becoming to a child, Attention—Care, heed, etc.), the grantee must give to him 'care,' which requires service, and in meaning and contemplation this service requires more than maintenance, and by its terms requires of the grantee every element of provision for physical, mental and moral well-being to be exercised toward and given to the grantor so long as he should live. 9 C. J., page 1286, word 'care.' Chicago, etc., Ry. v. Johnson, 103 Ill. 512; Harlan v. Harlan, 154 Cal. 341, 98 P. 32; Kelly v. Jefferis, 3 Pennewill (Del.) 286, 50 A. 215; Christy v. Pulliam, 17 Ill. 59; Johnson v. Ry., 131 Wis. 627, 111 N. W. 722.

"In Harlan v. Harlan, supra, the Supreme Court of California says of the word 'care,' as used in the civil code of that state:

" 'If not synonymous with maintenance,' is 'a broader term [and] it includes every element of provision for the physical, moral, and mental well-being of the children.'

"In Kelly v. Jefferis, 3 Pennewill (Del.) 289, 50 A. page 216, the Superior Court of Delaware says:

" 'It is obvious that a legacy for the care of a person is substantially the same as a legacy for the maintenance of such person.'

"The filial kindness and attention of the daughter, Martha D. Janes, to her aged father, David Jarrett, during his declining years and until he should die, was a thing of inestimable value to him. It assured to him years of repose and without worry, without work, and without effort. It assured to him, in his mind, the constant watchful attention of a dutiful child. It assured to him, in his judgment, an absolute insurance and protection against loneliness at life's close, and want for the necessaries of life, and nursing when he becomes to that age that would require it."

It is seen that they first define the word "attention" as meaning "care," and then define "care" as importing an onerous consideration, citing authorities in support of their construction of the word "care." But we do not have that word before us. The grantor used the word "attention." While "care" is one of its accepted meanings, that meaning should be given only when called for by the context, or when necessary to effectuate a presumed intent. Such was not its meaning as used in this deed.

The word "filial" was used to modify "attention." This word is thus defined by Webster:

"(1) Of or pertaining to, a son or daughter, as becoming to a child in relation to its parents; as, filial obedience.

"(2) Bearing or assuming the relation of a child."

Webster thus defines "attention": "An act of civility or courtesy; care for the wishes, comfort or pleasure of others; as, attentions paid to a stranger. Syn.: Care, heed, study, application, advertence, respect, regard, consideration."

As thus defined, "filial kindness and attention" does not imply an onerous consideration, but only such attention as was becoming to a daughter in relation to her old father; that is, the usual and natural treatment of the father by the daughter. By giving these words this meaning, we give effect to the presumed intent of the grantor to make a gift of this certificate, while appellants' construction would destroy that intent.

The doctrine of ejusdem generis is also against appellants. As already said, the word "attention" is qualified by the word "filial," as is also the accompanying word, "kindness." Common usage would give "filial kindness" the meaning we have quoted above. Because of the use of the word "filial" and the clear meaning it gives the word "kindness," the word "attention" should be so construed as to import the same kind of

service, not as synonymous therewith, but services of the same nature. Gladys City Oil, Gas & Mfg. Co. v. Right of Way Oil Co. (Tex. Civ. App.) 137 S. W. 178. This construction rebuts the inference of an onerous consideration.

Appellants contend further that on the face of the deed the consideration was contractual, that is for "kindness and attention" not performed, but to be performed in the future, thereby making the title onerous. Their proposition and argument is as follows: "The service was to be performed 'during' old age. How long? When? The dictionary gives as a synonym for 'during' the word 'pending' and gives to the word 'during' the meaning 'as long as the existence of' as 'during life.' This is the legal meaning of the word as here used. As long as he lives."

When compelled by the context the word "during" should be defined as appellants insist. But it is also defined by the Winston Simplified Dictionary, one of the latest authorities, as meaning *"in the time of, at some period of."* Among these definitions the rules of construction require us to select the one that will effectuate the presumed intent of the grantor, if in doing so we do no violence to the rest of the language of the deed. We think the word "during," as used in this deed, should be defined as "at some period of." The clause should, then, be construed as if it read: "Filial kindness and attention to me *at some period of my old age.*" On this construction, the consideration would be for past services, fully supporting the presumption of a gift. In Anderson v. Casey-Swasey Co., 103 Tex. 466, 129 S. W. 349, the recitation as to consideration was: "The love I have for my daughter-in-law, Mrs. Lucy Anderson, and to compensate for the care and attention she has given me for the past six years during my ill health." It was held that this language made the conveyance a gift to the grantee and vested the property in her as her separate estate.

The granting clause in the deed under consideration is as follows: "Have granted, transferred, donated and conveyed by these presents unto the said Martha D. Janes and her heirs and assigns. * * * And I now relinquish to my said daughter and her heirs and assigns all my right, title and interest in and to said certificate & authorize her. at once to assume the control and management of the said certificate and the interest hereby conveyed." There is nothing in this language that forces an onerous construction. Appellants have read into it the word "bargained," and have construed the word "donated" by implications arising therefrom under and in recognition of the rule of ejusdem generis. The words "granted," "transferred," and "conveyed" are mere words of conveyance, carrying no suggestion or implication as to the character of title transferred, suitable and proper both in deeds of gift and in deeds of sale. But the words "bargained" and "donated" have broader meanings, and. as argued by appellants, carry with them implications as to the title. However, as the word "bargained" is not in this deed, "donated" must be construed without the implication arising therefrom, and must be given its common and accepted meaning. As agreed by all parties, the word has many meanings. Among these one must be selected that will give effect to the presumed intent of the grantor to make the deed one of gift, provided the word has such meaning, and we think it has. This is made perfectly plain to us by Fisk v. Flores, 43 Tex. 340, where it was said: "Donation inter vivos is an act by which one gives to another irrevocably and gratuitously some property of which he becomes the immediate owner." And again: "It is also quite evident that it is entirely consistent with the nature of a title by 'donation' that the donor may be moved by reason of services rendered by the donee to make the donation, and that it is induced by such consideration does not take from the transaction the character of 'a donation.'" And again: "That a donation is remuneration or compensation for services rendered by a married woman to the donor is not a part of the community estate of the spouses, is plainly shown, we think, by the following citation of Escriche. In specifically enumerating property acquired by husband or wife, which forms a part of the ganancial estate, and such as does not, he says: [Spanish quotation]; i. e., remunerative or compensatory donations which are made to one of the consorts for his or her individual merits form no part of the community estate."

The land was referred to in the deed of the woman, Vela, and this language is used. "I am now the owner of said piece of land by donation made to me in compensation for various services," and the court says, after using the language last above quoted from Escriche: "We conclude, therefore, that the recital in the deed from Vela to Ruiz does not show authority in the husband, Odon, to alienate the lot."

We must give some effect to the concluding sentence of the granting clause, whereby the grantor relinquished to his daughter all his right, title, and interest in and to the certificate and authorized her at once to assume its control and management. Especially do we call attention to the concluding language of this sentence: "I * * * authorize her at once to exercise the control and management of said certificate and the interest hereby conveyed."

It is the law, independent of the presumption recognized in Owens v. Tankersley, that a separate estate in the wife will be created when she is empowered by the deed to do acts concerning the estate inconsistent with the disability of coverture. This deed authorized her to control and manage the cer-

tificate and the interest therein conveyed. This grant of power was inconsistent with the disability of coverture, since it was a grant of authority to the wife that as it relates to community property was given by statute to the husband. Laufer v. Powell, 30 Tex. Civ. App. 604, 71 S. W. 549, is directly in point. There the language construed was: "To have and to hold and enjoy and dispose of the said land in any and every manner she may think proper for her own use, benefit, and behoof." While not in the exact words, the language in the deed before us is subject to the same construction as given that deed. It was there held that the property conveyed did not become part of the community. This construction was given in recognition of the following rule announced by the court in support of its ruling: "The cases in which a separate estate has been created are classified as follows: * * * (3) When the wife is empowered to do acts concerning the estate inconsistent with the disability of coverture." If we give this rule effect, the construction of this language alone makes the property conveyed the separate estate of Mrs. Janes.

In construing this deed, we have not considered only "this or that part of the instrument," but the entire instrument "from side to side, end to end, and by its four corners—anywhere, everywhere, within its top, bottom and sides," within the rule announced by 18 C. J. 256. In our judgment it is unambiguous. All the language is subject to a reasonable construction, giving due effect to its common usage, effectuating the presumed intent of the grantor to make the instrument a deed of gift. We have done violence to none of the language used, but our definitions are taken from the standard dictionaries and reasonably follow from the context and the circumstances of their use. On authority, it follows that the verdict was correctly instructed in favor of appellees. This proposition was recognized in Reagan v. Bruff (Tex. Civ. App.) 108 S. W. 187, where the San Antonio court used the following language: "'Where there is no ambiguity in an instrument and the intention of the parties may be ascertained from its terms without explanation, it is the duty of the court to construe it for the jury and instruct them as to the rights of the parties.' * * * If the parties have used words which have an ordinary meaning free from ambiguity, and no technical meaning is shown, extrinsic evidence is inadmissible to show that the parties used such terms in a sense different from their ordinary meaning."

Our construction of the deed is in recognition of the presumption recognized in Owen v. Tankersley, supra, but we think the same construction would be forced even without the aid of that presumption. The clear meaning of the language used implies a gift.

By pretermitting appellees' other propositions, it is not to be inferred that we deny their soundness. They are presented under the extraneous evidence offered by the parties, and to sustain them would add no force to our judgment of affirmance. .

For the reasons given, the judgment of the trial court is in all things affirmed.

### On Rehearing.

PER CURIAM. ▇▇▇ By giving Owen v. Tankersley a controlling effect in our construction of the deed from Jarrett to Mrs. Janes, appellants say we nullified article 4619, Revised Statutes. This article provides, in part: "All the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved."

Admittedly, the land in controversy was "possessed" by Janes and wife at the time of his death. Presumptively, that fact made it community property. Also, since it was "acquired" during the marriage, by other provisions of this article it must be "deemed" community property. However, though it was both "acquired" during the marriage and "possessed" at the time the marriage was dissolved, the statute does not make it, in fact, community property. This article, by its express terms, preserves to the spouses their respective separate estates. The presumption of community property is but a presumption of law and not of fact. Daggett v. Worsham (Tex. Civ. App.) 264 S. W. 184. Discussing the difference between presumptions of law and presumptions of fact, Professor Wigmore, in volume 4, p. 3534, § 2491, of his work on Evidence, said: "Nevertheless, it must be kept in mind that the peculiar effect of a presumption 'of law' (that is the real presumption), is merely to invoke a rule of law compelling the jury to reach a conclusion in the absence of evidence to the contrary from the opponent. If the opponent does offer evidence to the contrary (sufficient to satisfy the Judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule."

On a trial where the issue of the true title to the property is involved, the mere introduction of rebutting evidence destroys the statutory presumption of law, leaving the issue in the hands of the jury "free from any rule." Where property is acquired during marriage or possessed at its dissolution, the effect of evidence on the issue of the true title rebutting the statutory presumption of community title is illustrated by the following propositions deduced from our decisions:

A deed to land from a third party to the wife "as her separate estate" creates a presumption that the property conveyed is to be her separate property. Kearse v. Kearse.

(Tex. Civ. App.) 262 S. W. 561. The statute does not so declare, but such a recitation in the deed overcomes the presumption of law arising from mere possession at the dissolution of the marriage, and makes the property the separate property of the wife, unless the opposite party meets the issue with controverting proof.

Where a husband conveys land to his wife, the presumption arises that he intended it as a gift to her as her separate property. Lemm v. Miller (Tex. Civ. App.) 245 S. W. 90.

Again, a conveyance to the wife under instructions from the husband raises the presumption of intention that the property should be her separate property. Daggett v. Worsham, supra.

Where the wife is given a control over the property conveyed inconsistent with the disabilities of coverture, the presumption arises that it was conveyed to her as her separate property. Laufer v. Powell, 30 Tex. Civ. App. 604, 71 S. W. 549.

In these cases the mere introduction of evidence, if believed by the jury, that the land was deeded to the wife by the husband or at his direction, or that the deed contained language conveying the land to the wife for her separate use and benefit, or that it gave her control over the property inconsistent with the disabilities of coverture, overcame the presumption of law that the property was community property, forcing a decree that the property was the separate property of the wife when not controverted. The effect was not merely to make an issue of fact against the presumption of law that the property was community, but that presumption absolutely disappeared in the face of proof as to the true title. If the facts raising these presumptions appear on the face of the deed, its introduction raises the presumption of separate property. If the facts do not appear on the face of the deed, then proof of the facts by extraneous evidence, if believed by the jury, raises the presumption. However raised, the presumption, unless rebutted, completely rebuts the statutory presumption and compels a judgment decreeing a separate title to the wife.

 Our Constitution and statutes regulating the status of property acquired during marriage are rules of property and not rules of evidence. This is shown conclusively by the provisions of article 4619, that saves to the spouses their separate estates. This article preserves to the spouses the right to show their separate interests in all property acquired during marriage or possessed at its dissolution. Article 4614 provides that all property acquired by the wife after marriage by "gift" shall be her separate property. Neither of these articles undertakes to formulate rules of evidence by which the wife may prove the property was a gift, but having the right to make that proof, she must make it under the rules of the common law in their

application to evidence. A statute to this effect was enacted in 1836, and is now article 3713, which is as follows: "The common law of England as practiced and understood shall, in its application to evidence, be followed and practiced by the courts of this state, so far as the same may not be inconsistent with this title or any other law." We know of no statute modifying this article as it relates to the issues in this case.

If we are correct in our construction of our community property statutes to the effect that they are rules of property and not rules of evidence, then this article was available to the parties in trying the issue of Mrs. Janes' separate interest in this land. The common-law rules of evidence, as adopted by this article, have, since its adoption, been the law of this state in determining the issue as to the true status of property acquired during marriage or possessed at its dissolution. From the cases cited supra, it appears that proof of certain facts at common law gives rise to certain presumptions which as a matter of law control the judgment unless rebutted. In this case appellees offered a deed reciting that the chattel, the subject-matter of the deed, was being conveyed by a father to his married daughter. The relation between the grantor and the grantee was also shown by extraneous evidence. What was the legal effect of this recitation in the deed and of this extraneous proof? The recitation in the deed and the extraneous proof were admissible at common law. The weight of common-law evidence must be determined by the common-law rules. Owen v. Tankersley announced the rule that at common law the effect of the facts thus disclosed was that a gift from the father to the daughter must be presumed. When that fact was shown, the presumption of law that the property was community property disappeared, and the presumption of a "gift" determined absolutely the disposition of the case. Since that fact was shown upon the face of the deed by unambiguous terms, and since the other portions of the deed did not rebut the presumption of a gift, the presumption in favor of the wife was as strong as if the deed had contained language conveying it to her for her separate use and benefit. The presumption arising from use of language to that effect is of no more weight than the presumption arising from the delivery of a chattel from a father to a married daughter. Both arise at common law, and their weight and effect are determined by the rules of common law.

 We agree with appellants that Owen v. Tankersley was a common-law case. But appellants have failed to note that it involves both the common-law rules of evidence and the common-law rules of property. Thus they say if we recognize the common-law rule of evidence and indulge the presumption that the delivery of the chattel by Jarrett to his

married daughter presumes a gift, then we must enforce the common-law rule of property and hold that the title "immediately vested in the husband." Their language is: "If that case controlled the property rights here, and this transaction was a gift, the property vested immediately in the *husband* and not in the wife." This is an erroneous construction of the case. By the rules of evidence the court decreed that the delivery of the property presumed a "gift to the wife." That was the presumption arising under the rules of the common law, which is now the law of this state, and which we indulged in our original opinion. Having determined that the property was a gift to the wife, the court said, giving effect to the common-law rules of property, that it "immediately vested in the husband." The rule of property thus applied in Owen v. Tankersley, and only the rule of property, was changed by article 4614, which expressly preserves to the wife as her separate property such a gift.

We would respectfully call attention to the following propositions advanced by appellants in their motion for rehearing:

(a) "The law requires, in the construction of this instrument, that it be construed most favorably to the community. That all doubtful construction should be resolved in favor of the community. The statutory presumption is that it belongs to the community. This presumption cannot be destroyed except upon 'satisfactory evidence.' There must be found in the instrument 'satisfactory evidence' making the transaction a gift. It is presumed not to be a gift. The courts will look upon it as not a gift. If the language employed is susceptible of two views, one indicating a gift and one to the contrary, it will be so read as to make it not a gift, because the presumption of the law is that it is not a gift, and this presumption must be overcome by 'satisfactory proof' upon the face of the instrument. The instrument must plainly make it a gift. In case of doubt it is not a gift, because to be a gift it must be shown to be a gift by satisfactory evidence."

(b) "Under the law the burden rests upon the person attacking the deed to show that it was one of gift and requires that it be construed most favorably to the community, and as passing the estate to the community, and to resolve all doubtful construction in favor of the property as belonging to the common property or community estate of the marital spouses."

(c) "All parts of the deed must be made to support its status fixed by law as conveying the property to the community and excluding the idea of a gift, if that can be done without doing violence to the language used."

(d) "There is in the construction of this instrument and in this transaction, no presumed intent on the part of the grantor to make a gift, while on the contrary, in this case, the presumption of law is against a gift."

(e) "There is in this case no presumed intent on the part of the grantor to make the deed one of gift."

(f) "The status of property in Texas, whether it be separate or community, is fixed and controlled alone by the constitution and statutes of Texas, and the property here involved, is by law declared to belong to the community and does belong to the community unless by 'satisfactory evidence' it is shown to be a gift to the wife. The declaration of law is that it is not a gift. The instrument evidencing the conveyance will be construed most favorably to the community and the law resolves all doubtful constructions in favor of the property belonging to the community, because its status is fixed by statute as being the property of the community *unless.* To deprive the community of its ownership of the property the evidence must exclude every hypothesis except that consistent with a pure gift."

The underlying fallacy in all these propositions is that appellants deduce the presumption of law arising under article 4619 from the deed of conveyance. That is not the law. The deed as such has no relation to the statutory presumption. This presumption rests solely and alone upon the fact that the property was acquired during marriage or possessed at its dissolution. The deed is only evidentiary on the issue of true title, and accordingly as it is worded may or may not be important on that issue. Where by its terms it is negative, it is without weight, neither weakening or strengthening the presumption of law; but where by certain of its terms it manifests an intent to make the property the separate estate of the wife, the presumption of community title disappears absolutely and all the other language of the deed must be made to effectuate that intent when it is reasonably susceptible of that construction. All the cases cited supra illustrate and sustain this proposition. There is no statute making property the separate estate of the wife because deeded to her by her husband, or at his direction, or because the deed recites it is for her separate estate, or because it confers upon her power of control inconsistent with the disabilities of coverture. But language to the effect just indicated manifests an intent to make the property the separate property of the wife, and the courts effectuate that intent without giving any weight to the presumption arising under the statute. Because of the language of the deed or of the extraneous proof to the same effect, the presumption of law simply disappears from the case and is no longer a factor in construing the deed nor in weighing the evidence.

The presumption of law controls only in the absence of proof. Upon the coming in of *any* proof it disappears. As held by the de-

cisions cited supra, the proof may be on the face of the deed itself. There is no rule of law requiring that the language of the deed "be construed most favorably to the community," nor forcing the courts "to resolve all doubtful construction in favor of the property as belonging to the community property," nor to the effect that "all parts of the deed must be made to support its status fixed by law as conveying the property to the community and exclude the idea of a 'gift.' " The recitations of the deed when before the court for the purpose of construction take no color whatever from the presumption of law. In construing the deed courts must, as in construing all other deeds, arrive at the intent of the parties by applying the recognized canons of construction, without giving any weight whatever to the statutory presumption. When on the face of the deed itself no intent is manifest, then the presumption of law prevails and makes a prima facie case for the community. That is what we meant when we said in our original opinion: "The usual presumption is that a conveyance to either marital partner during coverture, unless expressly negatived by appropriate language, makes the property community." But where there is an intent to make the property the separate estate of the wife, that intent controls its construction.

Believing that we are correct in all that we said in our original opinion, appellants' motion for rehearing is overruled.